# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

VIRGIL VAN STELTON, CAROL VAN
STELTON, AND ALVIN VAN
STELTON,

          Plaintiffs,

vs.

JERRY VAN STELTON, DONNA VAN
STELTON, EUGENE VAN STELTON,
GARY CHRISTIANS, DOUG WEBER,
SCOTT GRIES, NATE KRIKKE,
ROBERT E. HANSEN, DANIEL
DEKOTER, OSCEOLA COUNTY,
IOWA, THE CITY OF SIBLEY, IOWA,
AND DEKOTER, THOLE AND
DAWSON, P.C.

          Defendants.

No. C11-4045-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING DEFENDANTS'
MOTIONS TO DISMISS**

---

## TABLE OF CONTENTS

I.     **INTRODUCTION AND BACKGROUND**................................................4
    A.    *Factual Background* ........................................................ 4
        1.    *The parties and principal actors* ........................... 4
        2.    *Osceola County's tax law* ....................................... 5
        3.    *The Enterprise* ........................................................ 6
        4.    *Tax protest and reaction* ....................................... 6
        5.    *The Van Stelton Trust kerfuffle* .......................... 9
    B.    *Procedural Background* ..................................................... 12

II.    **LEGAL ANALYSIS** ................................................................. 14
    A.    *Standards For A Motion To Dismiss* ............................. 14
    B.    *Sufficiency Of the § 1983 Allegations* ......................... 16
        1.    *Requirements for § 1983 action* ......................... 16
        2.    *Allegations against the Law Firm defendants*...................... 19

|  |  | a. | DeKoter's actions .................................................. 21 |
|  |  | b. | The Law Firm's liability ........................................ 22 |
|  | C. | Sufficiency Of RICO Allegations ................................... 25 |
|  |  | 1. | Purpose and scope of RICO .................................... 25 |
|  |  | 2. | Requirements for RICO claim ................................. 27 |
|  |  | 3. | Analysis ............................................................ 29 |
|  | D. | First Amendment Right To Petition Claim Against The County Defendants ............................................................... 32 |
|  |  | 1. | Overview of the right to access and requirements for claim ..... 34 |
|  |  | 2. | Analysis ............................................................ 35 |
|  | E. | State Law Claims ..................................................... 37 |
|  |  | 1. | Carol Van Stelton's slander and libel claim ................... 37 |
|  |  | 2. | False arrest claim against the Law Firm defendants .............. 37 |
|  |  | 3. | Malicious prosecution claim against the Law Firm defendants ................................................... 39 |
|  |  | 4. | Defamation claim against the Law Firm defendants .............. 42 |
|  |  | 5. | Tortious interference with prospective business relations claims ................................................ 44 |
|  |  |  | a. Requirements for a claim ........................ 45 |
|  |  |  | b. Claim against the Law Firm defendants .................... 45 |
|  |  |  | c. Claim against the County defendants ........................ 47 |
|  |  | 6. | Fraud/breach of fiduciary duty ...................................... 47 |
|  |  |  | a. Fraud ............................................................ 47 |
|  |  |  | b. Breach of fiduciary duty ....................................... 49 |
|  |  | 7. | Ongoing criminal conduct ........................................ 52 |
|  |  |  | a. Overview of the OCC ........................................ 52 |
|  |  |  | b. Analysis ...................................................... 54 |
|  | F. | The City Of Sibley's Motion ..................................... 54 |
| III. | CONCLUSION ............................................................ 55 |

In music, a "mashup" is a song "created by blending two or more pre-recorded songs, usually by overlaying the vocal track of one song seamlessly over the instrumental track of another."  *Mashup*, http://en.wikipedia.org/wiki/Mashup_(music) (last visited July 15, 2013).   Plaintiffs' Third Amended Complaint reads like a literary mashup of John Grisham's novel, "the Firm," and John Steinbeck's "East of Eden."[1] Plaintiffs allege that the defendant law firm controls and manipulates a wide array of legal matters in Osceola County, Iowa.  The law firm allegedly maintains such control through symbiotic relationships it enjoys with the county attorney and sheriff, as well its attorneys' self-serving advice to county officials.  Plaintiffs also allege a conflict between two sets of brothers over their interests in a family trust.   In this sibling conflict, the defendant law firm has allegedly aligned itself with one set of brothers who, not by coincidence, are clients.  Plaintiffs bring a panoply of claims against the law firm, one set of the brothers, and other defendants, including claims for civil rights violations under 42 U.S.C. § 1983; violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq*.; and pendent state law claims for false arrest, malicious prosecution, slander and libel, and tortious interference with prospective economic advantage.   Defendants' motions to dismiss require me to consider whether plaintiffs' allegations adequately state viable claims under Federal or Iowa law.

---

[1]In his novel, The Firm, author John Grisham describes a powerful and corrupt law firm, with ties to organized crime, that will do just about anything for a fee regardless of legality or ethics. JOHN GRISHAM, THE FIRM (1991).  East of Eden is Steinbeck's gothic retelling of the Cain and Abel story of sibling rivalry set in Monterey and Salinas, California, during the early part of the last century. JOHN STEINBECK, EAST OF EDEN (1952).

# I. INTRODUCTION AND BACKGROUND

## A. Factual Background

"When ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). Thus, the factual background presented here is based on the plaintiffs' allegations in their Third Amended Complaint.

### 1. The parties and principal actors

Plaintiffs Virgil Van Stelton and his wife, plaintiff Carol Van Stelton, are residents of Iowa. They both live in Sibley, Iowa, which is located in Osceola County. Both own real estate in Osceola County and pay real estate taxes there. Plaintiff Alvin Van Stelton is also a resident of Iowa. He lives in Ashton, Iowa, which is also located in Osceola County. He too owns real estate in Osceola County and pays real estate taxes there. Defendants Jerry Van Stelton, Donna Van Stelton, and Eugene Van Stelton are residents of Iowa, all living in Sibley. Virgil, Alvin, Jerry, and Eugene are brothers. Jacob Van Stelton and Margaret Van Stelton were their father and step-mother.

Defendants Gary Christians, Doug Weber, Scott Gries, Nate Krikke, Robert E. Hansen, and Daniel E. DeKoter are also residents of Iowa. Weber is the Osceola County Sheriff. Hansen is the Osceola County Attorney. Defendant DeKoter, Thole, and Dawson, P.L.C. ("the Law Firm") is a law firm with its principal offices in Sibley. DeKoter and Harold D. Dawson are attorneys and partners in the Law Firm. Sibley is one of the Law Firm's clients.

Dawson also serves as compensation counsel to the Osceola County Board of Supervisors. DeKoter is legal counsel for the Osceola County Economic Development Commission. The Osceola County Economic Development Commission provides

economic development funds to business interests in Osceola County through banks in Sibley. The banks are clients of the Law Firm. The business interests which receive economic development project funds are referred to the Law Firm for legal services in connection with the development projects.

## 2.    *Osceola County's tax law*

Osceola County allocates its real estate tax proceeds under what is termed "the Unified Law". The Law Firm's predecessor entities were instrumental in Osceola County implementing the Unified Law as part of its home rule powers.[2] Osceola County's rural taxpayers pay the majority of the county's property taxes. The Unified Law has been administered in such a way as to "provide disproportionate benefits" to the county seat, Sibley, and disproportionate funding of Osceola County's central administration. The Unified Law continues to be followed in Osceola County even though it has been repealed or its term has expired. Sibley's taxpayers benefit from the Unified Law by receiving a disproportionate allocation of tax funding under it. As a result, Sibley taxpayers support the Unified Law in order to maintain a reduced tax burden.

---

[2]The Supreme Court of Iowa has observed:

> Under our form of government in Iowa, counties are empowered to perform any function to "protect and preserve the rights, privileges, and property of the county or of its residents, and to preserve and improve the peace, safety, health, welfare, comfort, and convenience of its residents" except as limited by the constitution or a statute.

*Warren Cnty. Bd. of Health v. Warren Cnty. Bd. of Supervisors*, 654 N.W.2d 910, 913 (Iowa 2002).

### 3. The Enterprise

DeKoter, the Law Firm, County Attorney Hansen, and Sheriff Weber have formed an association ("the Enterprise"). The Enterprise's members benefit from the Unified Law's maladministration because it funds a corrupt political base of support which furthers the Enterprise's actions. Hansen was elected and has been reelected with the support of DeKoter, the Law Firm, and the Law Firm's clients. Hansen serves the Enterprises' and Sibley's interests by failing to properly advise Osceola County government officials on the Unified Law's requirements and administration. In turn, the Law Firm assures that Hansen is overcompensated through Dawson's advice to the Osceola County Board of Supervisors in his role as its compensation counsel. Weber is also overcompensated as a reward for his "doing the bidding" of DeKoter and the Law Firm.

Hansen and Weber selectively enforced criminal laws and ordinances to benefit the Law Firm's clients and used their official positions to suppress local political activities in order to maintain the balance of power within the county. The Enterprise controls elections to the Osceola County Board of Supervisors in order to benefit Sibley voters and uses intimidation to control the board members. If the board was perceived to be taking any action detrimental to Sibley's interests or threatening Hansen or Weber's compensation, DeKoter or his partner Dawson would threaten a lawsuit against the board.

### 4. Tax protest and reaction

Some rural citizens of Osceola County formed the Osceola County Taxpayers Association ("OCTA") to investigate what they perceived to be the disproportionate allocation of real estate tax proceeds in Osceola County. The OCTA concluded that Sibley receives 60 percent of the funding provided by the Unified Law but only contributes 40 percent of the taxes. The OCTA was concerned that Hansen was being

paid the equivalent of a full-time salary for part-time work. The OCTA was also concerned about the budget of the Osceola County Sheriff's Department, which the OCTA viewed as "bloated." Plaintiffs were known to associate with the OCTA and Virgil is active in the OCTA.

In 2006, acting as the Osceola County Economic Development Commission's counsel, DeKoter sent a letter, entitled "A Peace Plan For Osceola County", to members of the Osceola County Board of Supervisors. In this letter, DeKoter wrote:

> Last week the Osceola County Taxpayers Association sponsored a smear campaign—a campaign of lies—directed at Osceola County attorney Robert Hansen and my law firm. The campaign was orchestrated by someone hired by the OCTA. I trust that the OTCA did not really understand how far this person would go when they hired him.
>
> We need to send the message that smear campaigns have no place in public life in this country. The real issue that motivates the OTCA is unified law, so let's try to resolve it. For the good of Osceola County, we need to bring the unified law issue to closure, then move forward by working together.
>
> Starting over a year ago, I began privately telling the OTCA how the unified law issue could be put on the ballot for a vote. The unified law statute provides one of the few areas of the law where voters speak directly. Unified law came into existence by vote of the people. The law provides that voters may put it to a vote at any general election in order to end it. The rural voters would vote separately on whether they want stay in unified law, majority vote, up or down. Each town would do the same. Any jurisdiction that voted to get out would then legally withdraw,
>
> The best way to decide this issue is not through smear campaigns. The best way to decide it is by the democratic process which was wisely included in the unified law statute. Therefore, I now publically call on the OTCA to agree to

the following eight point peace plan on the issue of the unified law:

1.    Put unified law on the ballot at the next election. Each jurisdiction will vote on whether it stays in or gets out, majority rules in that jurisdiction. By law, there is still a unified law district for the jurisdictions that vote to stay in, as long as there is at least two.

2.    Mutual apologies will be made all around for offenses given.

3.    No more personal attacks on each other. All parties will withdraw pamphlets, stop character assassination via telephone, and take down parts of web sites that attack peoples' integrity.

4.    No more letters to the editor or statements at public board meetings on this subject by either side until two months before the referendum.

5.    When the time comes for the campaign on unified law, all ads and campaign literature and editorials would be screened for personal attacks by a neutral, level-headed committee of citizens before they are issued to the public. I would personally suggest that we ask the Osceola County Ministerial Association to referee the ads. All campaign ads would be required to be out and issued to the public no later than two weeks before the election, to avoid any last-minute shenanigans.

6.    No lawsuits from either side.

7.    After the referendum, abide by the will of the voters without complaint or personal attacks.

8.    Repeat the same process in the future if people want to submit the issue to a referendum again.

I hope that we can bring this problem to an end for the good of everyone.

DeKoter Letter at 1-2; Third Am. Complaint, Ext A. DeKoter was not authorized to propose any solution to the dispute over the Unified Law.

In 2011, the Osceola Board of Supervisors began examining Weber's compensation. In response, Dawson acted contrary to his duty to the board as its compensation counsel. Instead, he acted to benefit Weber by counseling the board that comparing Weber's compensation with sheriffs in counties of equivalent size constituted a breach of contract making them liable for damages to Weber.

On November 7, 2012, DeKoter sent an email to Sibley and Sibley businesses in which he admitted that he had undertaken "political" activities to protect Sibley from the harm that "a fair tax allocation scheme might cause to it and its businesses." Third Am. Complaint at ¶ 132. DeKoter sent the email to impress upon its recipients that he was protecting Sibley and its businesses from possible economic harm that would occur if the OCTA obtained relief from the Unified Law.

### 5.    *The Van Stelton Trust kerfuffle*

Virgil, Alvin, Jerry, and Eugene inherited, from their mother, a 40 acre parcel of land in Osceola County. All of their mother's remaining property was inherited by their father, Jacob Van Stelton. Jacob created a trust in Arizona, the Van Stelton Trust. The Van Stelton brothers were beneficiaries of a substantial portion of the Van Stelton Trust. Jacob became incompetent prior to his death, and, under the terms of the Van Stelton Trust, Alvin, Jerry, and Eugene were made trustees of it. DeKoter was Jerry and Eugene's attorney. DeKoter was then retained as attorney for the Van Stelton Trust.

In his capacity as the attorney for the Van Stelton Trust, DeKoter interfered with communications between Alvin and Virgil, and Margaret Van Stelton, their step-mother. DeKoter did so by contacting, in person and telephonically, the nursing facility staff caring for Margaret "to create suspicions in the mind of staff concerning

Margaret's safety and security in the presence of Alvin and Virgil Van Stelton and her ongoing contacts with them and Carol Van Stelton." Third Am. Complaint at ¶ 68. DeKoter took these actions to protect Jerry and Eugene from possible liability for underpaying for rent on trust lands in Osceola County. DeKoter also made changes to the allocation of trust assets. He also made a fraudulent conveyance of 40 acres of land into the Van Stelton Trust. The land had been inherited by the Van Stelton brothers from their mother. The 40 acres is used to grow crops which are sold in interstate commerce.

Prior to Margaret's death in 2007, Alvin was visiting her at her assisted living quarters when DeKoter arrived. DeKoter sought to influence Margaret to remove Alvin as one of the trustees of the Van Stelton Trust. DeKoter ordered Alvin to leave or he would have Alvin forcibly removed by Weber. Alvin believed that DeKoter would use Weber to have him forcibly removed. To avoid upsetting Margaret, Alvin left. With him gone, DeKoter exercised undue influence over Margaret, causing her to remove Alvin as one of the trustees. Following Alvin's removal as a trustee, changes were made to the administration of the trust which benefited Jerry and Eugene, but were detrimental to Alvin and Virgil.

Jerry and Eugene substantially underpaid the market value rent on the trust farmland from 2003, when they were appointed trustees, until 2009, when the final distribution of trust assets occurred. Jerry and Eugene refused to disclose the rental amounts for trust lands to the trust. Virgil and Alvin filed a lawsuit against Jerry and Eugene in Iowa District Court for Osceola County.

Alvin and Virgil requested that Weber conduct a criminal investigation into DeKoter, Jerry and Eugene's actions. Weber, however, did not investigate their allegations. DeKoter encouraged criminal complaints be made against Alvin and Virgil by Jerry and Eugene. Jerry, Eugene, and Donna Van Stelton then met with Weber

seeking additional charges be filed against Virgil. They falsely claimed that Virgil threatened DeKoter.

On May 11, 2009, Virgil was attacked by Jerry in order to obtain a digital tape recorder that Virgil had on him. Virgil's recorder contained "a conversation which would exonerate him from any claim that he made a threat against the Defendant DeKoter." Third Am. Complaint at ¶ 96. Jerry took the recorder from Virgil and tossed it in a ditch. Gary Christians made a false police report that Virgil was trespassing. Virgil was arrested for domestic assault and trespass by Scott Gries and Nate Krikke. Virgil was later charged with assault causing bodily injury. Weber, Gries, Krikke, and Hansen knew that the charges against Virgil were false and without a legal basis.

Virgil's arrest was initiated by Jerry at DeKoter and Hansen's direction as a pretext to seize Virgil's tape recorder. Gries seized Virgil's tape recorder from the ditch without a search warrant. The tape recorder was played while it was in the Osceola County Sheriff's Department's custody. Virgil's tape recorder was returned after he was released from jail. Virgil found that a recording had been deleted.

Weber and Hansen caused or allowed the search of Virgil's tape recorder in an attempt to obtain evidence on which to bring "false charges" against Virgil, and intimidate him. The Enterprise was the intended beneficiary of these actions. On May 12, 2009, the Osceola County Sheriff's Department caused a report of Virgil's arrest to be broadcast on local radio. This was done to intimidate Virgil, Alvin, Carol, and other opponents of the Unified Law. The radio transmission was also made to further Jerry, Eugene, DeKoter, and the Law Firm's scheme to interfere with Virgil and Alvin's inheritance of land.

Nine days after Virgil's arrest, Weber telephoned Carol at work, the Sibley-Ocheydan Schools, and informed her of the charges facing Virgil. Weber made the call

solely to intimidate her and further the scheme to defraud Virgil and Alvin through the fraudulent administration of the Van Stelton Trust. DeKoter directed Weber to make the call.

### B.    Procedural Background

On May 11, 2011, plaintiffs filed their initial *pro se* Complaint. The Complaint contained the following claims: (1) civil rights violation claims under 42 U.S.C. § 1983 by all plaintiffs; (2) claims by Virgil Van Stelton for false arrest, malicious prosecution, and loss of consortium; (3) claims by Virgil Van Stelton and Alvin Van Stelton for intentional infliction of emotional distress, slander, and "interference with Right to Petition for Redress of Grievances."

On January 6, 2012, plaintiffs filed their Amended Complaint. The Amended Complaint added Carol Van Stelton's claims for intentional infliction of emotional distress, loss of consortium, and slander. After plaintiffs retained counsel, plaintiffs sought and were granted leave to file a Second Amended Complaint on November 9, 2012. The Second Amended Complaint contained additional factual allegations and added the City of Sibley as a defendant. Generally, the Second Amended Complaint alleges that Hansen and Weber abused the power of their official positions by acting in concert with the other defendants, their friends and clients. The Second Amended Complaint contained the following claims: (1) civil rights violations under 42 U.S.C. § 1983; (2) violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq*.; (3) pendent state law claims for false arrest, malicious prosecution, slander and libel, tortious interference with prospective economic advantage, and declaratory judgment and injunctive relief.

Defendant DeKoter, and defendants Weber, Scott Gries, Nate Krikke, Hansen, Osceola County (collectively, "the County defendants") each filed motions to dismiss

portions of the Second Amended Complaint. In response, plaintiffs sought and were granted leave to file their Third Amended Complaint. The Third Amended Complaint contained more factual detail and added the City of Sibley and the Law Firm as named defendants (DeKoter and the Law Firm will collectively be referred to as "the Law Firm defendants" unless otherwise indicated). In general terms, the Third Amended Complaint again alleges that Hansen and Weber abused the power of their official positions by acting in concert with the other defendants to benefit them, their friends and clients. Plaintiffs have added claims under Iowa's Ongoing Criminal Conduct statute ("OCC"), *see* IOWA CODE ch. 706A, to their RICO claims in Count 2.

Defendants were permitted to submit supplemental briefs addressing the allegations contained in the Third Amended Complaint and how, if at all, those allegations impacted defendants' original arguments. Both the Law Firm defendants and the County defendants filed supplemental briefs seeking to dismiss portions of the Third Amended Complaint. Specifically, the County defendants seek dismissal of Count II (RICO) as to all plaintiffs; Count V (slander and libel) as to Carol Van Stelton; and Count VI (tortious interference with propective business relations) as to all plaintiffs. The Law Firm defendants seek dismissal of all claims against them in the Third Amended Complaint. Plaintiffs filed briefs in response. Both the Law Firm defendants and the County defendants then filed timely supplemental reply briefs.

Sibley also filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). In its motion, Sibley asserts that it is named as a defendant in only Count 8 in which plaintiffs seek declaratory judgment and/or injunctive relief against it. Sibley argues that both declaratory judgment and injunctive relief require a viable underlying cause of action but plaintiffs have alleged none. Thus, Sibley contends that the Third Amended Complaint fails to state a claim against it for which relief can be granted. Plaintiffs filed a timely resistance to Sibley's motion.

## II.    LEGAL ANALYSIS

The County defendants, the Law Firm defendants, and Sibley each seek dismissal of certain claims asserted against them for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6).  After reviewing the standards for a 12(b)(6) motion to dismiss, I will address the specific issues raised by defendants' motions.  Because of an overlap in the issues raised by the parties' motions, I will address the issues *seriatim*.

### A.    Standards For A Motion To Dismiss

Defendants seek dismissal of portions of plaintiffs' Third Amended Complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, which authorizes a pre-answer motion to dismiss for "failure to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  As the Eighth Circuit Court of Appeals recently explained,

> We review de novo the district court's grant of a motion to dismiss, accepting as true all factual allegations in the complaint and drawing all reasonable inferences in favor of the nonmoving party.  *See Palmer v. Ill. Farmers Ins. Co.*, 666 F.3d 1081, 1083 (8th Cir. 2012); *see also* Fed.R.Civ.P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009) (internal quotation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

*Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 850 (8th Cir. 2012); *accord Freitas v. Wells Fargo Home Mortg., Inc.*, 703 F.3d 436, 438 (8th Cir. 2013) (quoting *Richter*, 686 F.3d at 850); *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (stating the same standards). Courts consider "plausibility" by "'draw[ing] on [our own] judicial experience and common sense,'" *Whitney*, 700 F.3d at 1128 (quoting *Iqbal*, 556 U.S. at 679), and "'review[ing] the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation.'" *Id.* (quoting *Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 896 n.4 (8th Cir. 2010)). The Eighth Circuit Court of Appeals has refused, at the pleading stage, "to incorporate some general and formal level of evidentiary proof into the 'plausibility' requirement of *Iqbal* and *Twombly*." *Id.* Nevertheless, the question "is not whether [the pleader] might at some later stage be able to prove [facts alleged]; the question is whether [it] has adequately asserted facts (as contrasted with naked legal conclusions) to support [its] claims." *Id.* at 1129. Thus,

> [w]hile this court must "accept as true all facts pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the non-moving party," *United States v. Any & All Radio Station Transmission Equip.*, 207 F.3d 458, 462 (8th Cir. 2000), "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (quoting *[Bell Atl. Corp. v.] Twombly*, 550 U.S. [544,] 555, 127 S.Ct. 1955 [(2007)]).

*Gallagher v. City of Clayton*, 699 F.3d 1013, 1016 (8th Cir. 2012); *Whitney*, 700 F.3d at 1128 (stating the same standards).

In assessing "plausibility," as required by the Supreme Court in *Iqbal*, the Eighth Circuit Court of Appeals has explained that courts "consider[ ] only the materials that are 'necessarily embraced by the pleadings and exhibits attached to the

15

complaint,'" *Whitney*, 700 F.3d at 1128 (quoting *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003)), and "'materials that are part of the public record or do not contradict the complaint.'" *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 (8th Cir. 2012) (quoting *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999), and citing *Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011)). A more complete list of the matters outside of the pleadings that a court may consider, without converting a Rule 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment, pursuant to Rule 12(d), includes "'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned.'" *Miller*, 688 F.3d at 931 n.3 (quoting 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (3d ed. 2004)). With these standards in mind, I turn to consider defendants' motions to dismiss.

## B.     *Sufficiency Of the § 1983 Allegations*

The Law Firm defendants challenge the sufficiency of plaintiffs' § 1983 claims against them. Specifically, the Law Firm defendants contend plaintiffs have failed to plead state action by them. Plaintiffs respond that their pleadings satisfy § 1983's state action requirement. Consequently, the issue raised by this portion of the Law Firm defendants' motion is whether the Law Firm defendants may fairly be considered acting under color of state law for the purposes of § 1983.

### 1.     *Requirements for § 1983 action*

"Section 1983 provides a cause of action against any person who deprives an individual of federally guaranteed rights 'under color' of state law." *Filarsky v. Delia*, 132 S. Ct. 1657, 1661 (2012) (quoting 42 U.S.C. § 1983). In order to state a claim for

relief under 42 U.S.C. § 1983, plaintiffs must establish that they were "deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999); *accord Alexander v. Hedback*, ---F.3d---, 2013 WL 3242189, at *2 (8th Cir. June 27, 2013) ("To state a claim under 42 U.S.C. § 1983, a plaintiff must show that he was deprived of a right secured by the Constitution and the laws of the United States and that the deprivation was committed by a person acting under color of state law."). Thus, "[t]he essential elements of a constitutional claim under § 1983 are (1) that the defendant acted under color of state law, and (2) that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right." *L.L. Nelson Enters., Inc. v. County of St. Louis, Mo.*, 673 F.3d 799, 805 (8th Cir. 2012); *see Van Zee v. Hanson*, 630 F.3d 1126, 1128 (8th Cir. 2011); *Zutu v. Nelson*, 601 F.3d 842, 848 (8th Cir. 2010 (quoting S*chmidt v. City of Bella Villa*, 557 F.3d 564, 571 (8th Cir. 2009)); *Dennen v. City of Duluth*, 350 F.3d 786, 790 (8th Cir. 2003); *Murray v. City of Onawa*, 323 F.3d 616, 618 (8th Cir. 2003); *DuBose v. Kelly*, 187 F.3d 999, 1002 (8th Cir. 1999).

Courts have consistently treated the "under color of state law" element of § 1983 "as the same thing as the 'state action' required under the Fourteenth Amendment." *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982) (quoting *United States v. Price*, 383 U.S. 787, 794 (1966*)); accord Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 n.2 (2001); *Sullivan*, 526 U.S. at 50 (1999); *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 935 (1982); *Dossett v. First State Bank*, 399 F.3d 940, 947 (8th Cir. 2005); *Tancredi v. Metropolitan Life Ins. Co.*, 378 F.3d 220, 229 (2nd Cir. 2004); *Lee v. Katz*, 276 F.3d 550, 554 (9th Cir. 2002); *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001); *Tarpley v. Keistler*, 188 F.3d 788, 791 (7th Cir. 1999); *Abraham v. Raso*, 183 F.3d 279, 287 (3rd Cir. 1999); *Yeo v. Town of*

*Lexington*, 131 F.3d 241, 248 n.3 (1st Cir. 1997); *Doe v. Rains County Indep. Sch. Dist.*, 66 F.3d 1402, 1406 (5th Cir. 1995). "[S]tate action requires both an alleged constitutional deprivation 'caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible,' and that 'the party charged with the deprivation must be a person who may fairly said to be a state actor.'" *Sullivan*, 526 U.S. at 50 (quoting *Lugar*, 457 U.S. at 937). Careful attention to the state action requirement serves two purposes: it "preserves an area of individual freedom by limiting the reach of federal law and federal judicial power," *Lugar*, 457 U.S. at 936; and it avoids imposing on a state responsibility for conduct which was not under its control. *Brentwood Acad.*, 531 U.S. at 295.

The Eighth Circuit Court of Appeals has observed that:

> The Supreme Court has recognized a number of circumstances in which a private party may be characterized as a state actor, such as where the state has delegated to a private party a power "traditionally exclusively reserved to the State," *see Jackson v. Metro. Edison Co.*, 419 U.S. 345, 352, 95 S. Ct. 449, 42 L. Ed. 2d 477 (1974), where a private actor is a "willful participant in joint activity with the State or its agents," *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 151, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970), and where there is "pervasive entwinement" between the private entity and the state*, see Brentwood*, 531 U.S. at 291, 121 S. Ct. 924. These particular circumstances are merely examples and not intended to be exclusive. *See id.* at 295, 121 S. Ct. 924.

*Wickersham v. City of Columbia*, 481 F.3d 591, 597 (8th Cir. 2007). The court went on to point out that:

> The one unyielding requirement is that there be a "close nexus" not merely between the state and the private party, but between the state and the alleged deprivation itself. *See*

> *Brentwood*, 531 U.S. at 295, 121 S. Ct. 924. No such nexus
> exists where a private party acts with the mere approval or
> acquiescence of the state, *see Blum v. Yaretsky*, 457 U.S.
> 991, 1004-05, 102 S. Ct. 2777, 73 L.Ed.2d 534 (1982), but
> a private entity may be considered a state actor if it "has
> acted together with or has obtained significant aid from state
> officials" in furtherance of the challenged action. *Lugar*, 457
> U.S. at 937, 102 S. Ct. 2744.

*Wickersham*, 481 F.3d at 597.

### 2. *Allegations against the Law Firm defendants*

I begin my inquiry into whether the Law Firm defendants' conduct may be "fairly attributable to the State . . . . by identifying 'the specific conduct of which the plaintiff complains.'" *Sullivan*, 526 U.S. at 50–51 (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)); *see Cornish v. Correctional Servs. Corp.*, 402 F.3d 545, 550 (5th Cir. 2005); *Tancredi v. Metropolitian Life Ins. Co.*, 316 F.3d 308, 312 (2nd Cir. 2003). In making this inquiry, I recognize that "[a] complaint need not be articulately drafted in order to adequately allege that private persons are acting under color of state law." *Murray v. Wal-Mart, Inc.*, 874 F.2d 555, 558 (8th Cir. 1989).

I note that many of plaintiffs' allegations are made "upon information and belief." The Eighth Circuit Court of Appeals not yet addressed whether a pleading based on "information and belief" is sufficient to state a claim under *Iqbal* and *Twombly*. A number of federal courts, however, have held that pleadings based "on information and belief" are sufficient to state a claim after *Iqbal* and *Twombly*. *See Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) ("The *Twombly* plausibility standard, which applies to all civil actions, does not prevent a plaintiff from pleading facts alleged 'upon information and belief' where the facts are peculiarly within the possession and control of the defendant.") (citations omitted); *Gilmore v. Mississippi Coast Coliseum Comm'n*, No. 1:12-cv-183-HSO-RHW, 2013 WL 1194706,

at * 5 (S.D. Miss. Mar. 22, 2013) (following and quoting *Arista Records*, 604 F.3d at 120); *JBCHoldings NY, L.L.C. v. Pakter*, --- F. Supp. ---, 2013 WL 1149061, at * (S.D.NY. Mar. 20, 2013) ("[T]he Court is mindful that *Twombly* does not prevent a plaintiff from pleading facts "on information and belief" in appropriate circumstances."); *Circle Click Media L.L.C. v. Regus Mgmt. Group L.L.C.,* 2013 WL 57861, at *6 (N.D. Cal. Jan. 3, 2013) (following and quoting *Arista Records*, 604 F.3d at 120); *Jefferson v. Collins*, --- F. Supp.2d ---, 2012 WL 5941953, at *16 (D.D.C. Nov. 28, 2012) (same); *Basler Elec. Co. v. Fortis Plastics, L.L.C.,* no. 12-cv-713-JPG, 2012 WL 5298935, at *3 (S.D. Ill. Oct. 25, 2012) (same); *Wright v. Lehigh Valley Hosp. & Health Network*, No. 10–431, 2011 WL 2550361, at *3 (E.D. Pa. June 23, 2011) ("Although defendants take strong issue with Wright's use of 'upon information and belief' pleading, the allowance of pleading upon information and belief has been held to be appropriate under the *Twombly/Iqbal* regime where the facts required to be pled are uniquely in the control of the defendant."); *Brinkmeier v. Graco Children's Products Inc.*, 767 F. Supp.2d 488, 496 (D. Del. 2011) (permitting pleading upon information and belief even under Rule 9); *Simonian v. Blistex, Inc.*, No. 10CV01201, 2010 WL 4539450, at *3 (N.D.Ill. Nov. 3, 2010) (observing "nothing in either *Twombly* or *Iqbal* suggests that pleading based upon "information and belief" is necessarily deficient. The Court therefore concludes that pleading in this manner is not categorically improper, especially when information lies uniquely within the control of the defendant."); *Sunshine Media Group, Inc. v. Goldberg*, No. CV-10-0761-PHX-DGC, 2010 WL 2899081, at *4 (D. Ariz. July 22, 2010) (denying motion to dismiss, noting, "Parties are permitted to plead upon information and belief"). *But see Harmon v. Unisys Corp.*, 356 F. App'x 638, 641 (4th Cir. 2009) ("conclusory allegations" made upon "information and belief" are "insufficient to defeat a motion to dismiss"); *Solis v. City of Fresno*, No. 1:11–CV00053, 2012 WL 868681, at *8 (E.D. Cal. Mar.

13, 2012) ("In the post-*Twombly* and *Iqbal* era, pleading on information and belief, without more, is insufficient to survive a motion to dismiss for failure to state a claim."). Here, the specific facts of what took place at the alleged meetings between DeKoter, Hansen, and Weber are peculiarly within defendants' possession and control, and thus may be based on information and belief. *See Arista Records, L.L.C.*, 604 F.3d at 120.

### a. DeKoter's actions

I recognize that the Eighth Circuit Court of Appeals has clearly held that "[t]he conduct of counsel, either retained or appointed, in representing clients, does not constitute action under color of state law for purposes of a section 1983 violation." *Bilal* v. Kaplan, 904 F.2d 14, 15 (8th Cir. 1990); *see Harkins v. Eldredge*, 505 F.2d 802, 803 (8th Cir. 1974); *see also Eling v. Jones*, 797 F.2d 697, 699 (8th Cir. 1986). Plaintiffs, however, do not rely on DeKoter's representation of Sibley, the Osceola County Economic Development Commission, or any other Law Firm client to meet the "under color of state law" element of § 1983. Instead, plaintiffs allege that DeKoter controls and directs a symbiotic relationship with Hansen and Weber. In this relationship, DeKoter directs Hansen and Weber to selectively enforce criminal laws and ordinances to benefit the Law Firm's clients and used their official positions to suppress local political activities in order to maintain the balance of power within the county. In return for their actions, Hansen and Weber are rewarded with excessive compensation. Their overcompensation is allegedly assured through DeKoter's law partner's advice to the Osceola County Board of Supervisors in his role as its compensation counsel. Plaintiffs specifically allege that DeKoter orchestrated Virgil's false arrest with County Attorney Hansen as a pretext to seize Virgil's tape recorder. Thus, plaintiffs allege a concerted plan between DeKoter and the County defendants to violate due process rights. Taking these allegations of joint activity as true, they are

sufficient to make DeKoter a state actor liable under § 1983. *See Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980) (holding that defendants who conspired with and participated in bribery with federal judge acted under color of state law); *Adickes*, 398 U.S. at 152 (finding plaintiff entitled to relief under § 1983 against private party if she can prove that private party and police officer "reached an understanding" to cause her arrest on impermissible grounds); *Murray v. Wal–Mart, Inc.*, 874 F.2d 555, 558–59 (8th Cir. 1989) (holding store acted in concert with the police because store had a practice of working with the police department in prosecuting shoplifters; the store security officer was also an employee of the police department; and the security officer had "a close relationship with the prosecuting attorney who recommended prosecution based on the security officer's "word, not upon an independent investigation of the facts."). This portion of the Law Firm defendants' motion to dismiss is denied as to DeKoter.

### b. *The Law Firm's liability*

The question of whether the Law Firm may be considered a state actor is, however, a different question. The Law Firm defendants contend that the Law Firm cannot be liable under § 1983 for the actions of its lawyers based on a theory of respondeat superior. Plaintiffs have not addressed this argument in their brief.

It is well established that "[s]ection 1983 will not support a claim based on a respondeat superior theory of liability." *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981) (citing *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 694 (1978)); *see City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) ("Respondeat superior or vicarious liability will not attach under § 1983."); *Luckert v. Dodge Cnty.*, 684 F.3d 808, 817 (8th Cir. 2012) (holding prison supervisors were not liable under § 1983 on respondeat superior theory), *cert. denied*, 133 S. Ct. 865 (2013); *Brown v. Fortner*, 518 F.3d 552, 559 n.1 (8th Cir. 2008) (noting that § 1983 claims cannot be

based on respondeat superior or vicarious liability). The Court recognized in *Monell* that the text of § 1983 "cannot be easily read to impose liability vicariously on governing bodies solely on the basis of the existence of an employer-employee relationship with a tortfeasor." *Monell*, 436 U.S. at 692. To the contrary, the Court noted that Congress explicitly provided "that A's tort became B's liability if B 'caused' A to subject another to a tort." *Id.* Thus, the Court observed that § 1983 authorizes suit "for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Id.* at 690–691. "At the same time, the Court rejected the use of the doctrine of respondeat superior and concluded that municipalities could be held liable only when an injury was inflicted by a government's "'lawmakers or by those whose edicts or acts may fairly be said to represent official policy.'" *City of St. Louis v. Praprotnik*, 458 U.S. 112, 121 (1988) (quoting *Monell*, 436 U.S. at 694).

Although *Monell* involved a municipal corporation, the Eighth Circuit Court of Appeals and every other circuit to consider the issue has extended *Monell's* holding to private corporations and employers. *See Royster v. Nichols*, 698 F.3d 681, 692 (8th Cir. 2012) (holding that claims against private security firm failed as a matter of law because "'respondeat superior is inapplicable to claims under 42 U.S.C. § 1983.'") (quoting *Bell v. Kansas City Police Dep't*, 635 F.3d 346, 347 (8th Cir. 2011)); *see also Maniscalco v. Simon*, 712 F.3d 1139, 1144 (7th Cir. 2013) (holding that "vicarious liability under the doctrine of respondeat superior is unavailable against private employers sued under § 1983 based on the rationale of *Monell*."); *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012) (noting that "we see no basis in the reasoning underlying Monell to distinguish between municipalities and private entities acting under color of state law."); *Savoie v. Martin*, 673 F.3d 488, 494 (6th Cir. 2012) (noting that "'every circuit to consider the issue' has extended 'to private corporations

as well' the rule that a defendant cannot be held liable under section 1983 on a respondeat superior or vicarious liability basis.") (quoting *Street v. Corrections Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996)); *Craig v. Floyd Cnty., Ga.*, 643 F.3d 1306, 1310 (11th Cir. 2011) (holding that § 1983 claims against limited liability company could not be based on respondeat superior); *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 (10th Cir. 2003) (holding that "a private actor 'cannot be held liable solely because it employs a tortfeasor—or, in other words . . . cannot be held liable under § 1983 on a respondeat superior theory.'") (quoting *Monell*, 436 U.S. at 691); *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 728 (4th Cir. 1999) (holding that "a private corporation is not liable under § 1983 for torts committed by special police officers when such liability is predicated solely upon a theory of respondeat superior."); *Iskander v. Village of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982); ("[J]ust as a municipal corporation is not vicariously liable upon a theory of respondeat superior for the constitutional torts of its employees, a private corporation is not vicariously liable under § 1983 for its employees' deprivations of others' civil rights.") (citation omitted)).

Therefore, in order to hold the Law Firm liable for the alleged acts of its attorneys, plaintiffs must allege that the Law firm directly caused the constitutional violations by instituting an official policy that was "'the moving force behind the deprivation of the plaintiff's rights.'" *Savoie*, 673 F.3d at 494 (quoting *Miller v. Sanilac Cnty.*, 606 F.3d 240, 255 (6th Cir. 2010)); *see Auvaa v. City of Taylorsville*, 506 F. Supp.2d 903, 909 (D. Utah 2007) (holding that for law firm to be liable for the acts of its agents, "the plaintiffs must show that the firm directly caused the constitutional violation by instituting an official policy of some nature that was the 'direct cause' or 'moving force' behind the constitutional violations."). The Third Amended Complaint, however, is completely bereft of any allegations that the Law

Firm was involved in establishing a policy or custom that was the cause of the alleged constitutional violations, and therefore cannot be a state actor. *See Auvaa,* 506 F. Supp.2d at 910; *see also Frompovicz v. Township of South Manheim*, No. 3:06cv2120; 2007 WL 2908292, at *8 (M.D. Pa. Oct. 4, 2007) (holding that "law firm cannot be fairly said to be a state actor" where there were no allegations that the law firm was involved in establishing a policy or custom leading to the constitutional violation). Accordingly, while DeKoter may be considered a state actor and liable under § 1983, the same cannot be said for the Law Firm. *See Frompovicz,* No. 3:06cv2120; 2007 WL 2908292, at *8 (holding that § 1983 claim against attorney could proceed because he could be deemed a "state actor" but dismissing § 1983 claim against law firm because respondeat superior liability was unavailable and law firm could not be considered to be a "state actor."). Thus, this portion of the Law Firm defendants' motion to dismiss is granted as to the Law Firm.

### C.    Sufficiency Of RICO Allegations

The County defendants and the Law Firm defendants both seek dismissal of plaintiffs' RICO claims against them. Before addressing the parties' specific arguments, I briefly review RICO's purpose and scope, and then the requirements for such a claim.

#### 1.    Purpose and scope of RICO

The Eighth Circuit has explained:

> Section 1962 of the RICO Act makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." *Nitro Distrib., Inc. v. Alticor, Inc.*, 565 F.3d 417,

428 (8th Cir. 2009) (quoting 18 U.S.C. § 1962(c)). "RICO
provides a private right of action for any person 'injured in
his business or property by reason of a violation of' its
substantive prohibitions." *Dahlgren v. First Nat'l Bank of
Holdrege*, 533 F.3d 681, 689 (8th Cir. 2008) (quoting 18
U.S.C. § 1964(c)).

*Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 353 (8th Cir. 2011). The Eighth Circuit

Court of Appeals has also observed that "'[t]he major purpose behind RICO is to curb

the infiltration of legitimate business organizations by racketeers.'" *Sinclair v. Hawke*,

314 F.3d 934, 944 (8th Cir. 2003) (quoting *Atlas Pile Driving Co. v. DiCon Fin. Co.*,

886 F.2d 986, 990 (8th Cir. 1989)). The Supreme Court explained that:

> The occasion for Congress' action was the perceived need to
> combat organized crime. But Congress for cogent reasons
> chose to enact a more general statute, one which, although it
> had organized crime as its focus, was not limited in
> application to organized crime. In Title IX, Congress
> picked out as key to RICO's application broad concepts that
> might fairly indicate an organized crime connection, but that
> it fully realized do not either individually or together provide
> anything approaching a perfect fit with "organized crime."
> *See,* e.g., [116 Cong.Rec.] at 18940 (Sen. McClellan) ("it is
> impossible to draw an effective statute which reaches most
> of the commercial activities of organized crime, yet does not
> include offenses commonly committed by persons outside
> organized crime as well").

*H.J. Inc.*, 492 U.S. at 248; *see Atlas Pile Driving Co.*, 886 F.2d 986, 990 (8th Cir.

1989) (citing *United States v. Turkette*, 452 U.S. 576, 591 (1981)). Thus, RICO also

imposes civil liability on other types of organizations that have no alleged ties to

organized crime. *Atlas Pile Driving Co.*, 886 F.2d at 990. A court's focus, however,

must be "to ensure that RICO's severe penalties are limited to 'enterprises consisting of

more than simple conspiracies to perpetrate the acts of racketeering.'" *United States v.*

*Davidson*, 122 F.3d 531, 534 (8th Cir. 1997) (quoting *United States v. Bledsoe*, 674 F.2d 647 (8th Cir. 1982)).

### 2.    Requirements for RICO claim

"A violation of § 1962(c) requires appellants to show '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'"  *Id. (quoting Nitro Distrib., Inc. v. Alticor, Inc.*, 565 F.3d 417, 428 (8th Cir. 2009) (quoting in turn *Sedima S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985) (footnote and internal quotation marks omitted)); *Gallagher v. Magner*, 619 F.3d 823, 842 (8th Cir. 2010); *Craig Outdoor Advertising, Inc. v. Viacom Outdoor, Inc.*, 528 F.3d 1001, 1027 (8th Cir. 2008).[3] "The requirements of § 1962(c) must be established as to each individual defendant." *Craig Outdoor Advertising, Inc.*, 528 F.3d at 1027.  In addition,

> A RICO claim must be pleaded with particularity under Rule 9(b). *Id.* "Under Rule 9(b)'s heightened pleading standard, allegations of fraud . . . [must] be pleaded with particularity. In other words, Rule 9(b) requires plaintiffs to plead the who, what, when, where, and how: the first paragraph of any newspaper story." *Summerhill [ v.*

---

[3]Although plaintiffs do not refer to any specific RICO section in their Third Amended Complaint, their RICO claims appear to be based solely on § 1962(c). Section 1962(a) provides that "[i]t shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity . . . to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." 18 U.S.C. § 1962(a).  Section 1962(b) provides that "[i]t shall be unlawful for any person through a pattern of racketeering activity . . . to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." 18 U.S.C. § 1962(b). Section 1962(d) prohibits any person from conspiring to violate any of the provisions of § 1962(a)-(c).  18 U.S.C. § 1962(d).    The Third Amended Complaint contains no allegations concerning plaintiffs' acquisition of an interest in a RICO enterprise or a conspiracy to violate any of the provisions of § 1962(a)-(c).

> *Terminix, Inc.*], 637 F.3d [877,] 880 [(8th Cir.2011)] (alteration in original) (citations and internal quotation marks omitted).

Crest Constr. II, Inc., 660 F.3d at 353.

A RICO enterprise "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Plaintiffs allege an association-in-fact enterprise consisting of DeKoter, Hansen, Weber, and the Law Firm. To properly plead a RICO enterprise, plaintiffs must allege the existence of an association that has "(1) a common purpose that animates the individuals associated with it; (2) an ongoing organization with members who function as a continuing unit; and (3) an ascertainable structure distinct from the conduct of a pattern of racketeering." *United States v. Lee*, 374 F.3d 637, 647 (8th Cir. 2004); *see Boyle v. United States*, 556 U.S. 938, 946 (2009) ("[A]n association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose."). To properly plead a pattern of racketeering activity, plaintiffs must allege "two or more related acts of racketeering activity that 'amount to or pose a threat of continued criminal activity.'" *Crest Constr. II, Inc.*, 660 F.3d. at 356 (quoting *Nitro Distrib., Inc.*, 565 F.3d at 428 (quoting in turn *Wisdom v. First Midwest Bank, of Poplar Bluff*, 167 F.3d 402, 406 (8th Cir.1999) (internal quotation marks omitted). "Racketeering activity" is defined in 18 U.S.C. § 1961(1) "as a list of predicate acts, including certain state law crimes, conduct that is indictable under various federal provisions, and numerous other offenses."[4] *Gallagher*, 619 F.3d at 841.

---

[4]Racketeering activities defined in § 1961(1) include murder, kidnaping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in narcotic or other dangerous drugs, specified federal offenses indictable under title 18,

### 3. Analysis

The County defendants and the Law Firm defendants both argue that plaintiffs have failed to plead two elements of a valid RICO claim: the existence of an enterprise, and a pattern of racketeering activity. Plaintiffs counter that their Third Amended Complaint contains sufficient allegations to satisfy both of these elements. Because I find it dispositive, I turn first to the question of whether plaintiffs have sufficiently alleged a pattern of racketeering activity.

As mentioned above, to satisfy the pattern requirement, plaintiffs must allege "two or more related acts of racketeering activity that 'amount to or pose a threat of continued criminal activity.'" *Crest Constr. II, Inc.*, 660 F.3d. at 356 (quoting *Nitro Distrib., Inc.*, 565 F.3d at 428 (quoting in turn *Wisdom*, 167 F.3d at 406 (internal quotation marks omitted). This requires not two aggregate predicate acts, but that each defendant committed two predicate acts of racketeering activity. *See Craig Outdoor Adver.*, 528 F.3d at 1027; *Aetna Sur. Co. v. P & B Autobody*, 43 F.3d 1546, 1560 (1st Cir. 1994); *United States v. Persico*, 832 F.2d 705, 714 (2d Cir. 1987); *In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 865 F. Supp. 2d 1002, 1036 (C.D. Cal. 2011); *Shahin v. Darling*, 606 F. Supp. 2d 525, 537 (D. Del. 2009); *World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*, 530 F. Supp 2d 486, 496 (S.D.N.Y. 2007);

---

including such offenses as bribery, counterfeiting, embezzlement, wire and mail fraud, witness tampering, interstate gambling offenses, other interstate offenses, and dealings in contraband, specified federal offenses indictable under title 29, including violations of restrictions on payments and loans to labor organizations and embezzlement from union funds, and further offenses including "any offense involving fraud connected with a case under title 11, fraud in the sale of securities, or the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in narcotic or other dangerous drugs, punishable under any law of the United States, or . . . any act which is indictable under the Currency and Foreign Transactions Reporting Act. . . ." 18 U.S.C. § 1961(1).

*Universal Tube & Rollform Equip. Corp. v. YouTube, Inc.*, 504 F. Supp. 2d 260, 271 (N.D. Ohio 2007); *cf. United States v. Local 560*, 780 F.2d 267 (3d Cir. 1985) (noting that under RICO an individual need not himself commit two predicate acts as long as that individual aids or abets the commission of the predicate offenses). As the Second Circuit Court of Appeals explained: "The focus of section 1962(c) is on the individual patterns of racketeering engaged in by a defendant, rather than the collective activities of the members of the enterprise." *Persico*, 832 F.2d at 714.

The pattern of racketeering activity requirement is referred to as "continuity plus relationship." *Handeen v. Lemaire*, 112 F.3d 1339, 1353 (8th Cir. 1997) (quoting *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989)); *see Lange v. Hocker*, 940 F.2d 359, 361 (8th Cir. 1991). The "continuity" element requires either "'multiple predicate acts occurring over a substantial period of time (closed-end continuity) or evidence that the alleged predicate acts threaten to extend into the future (open-ended continuity).'" *Crest Const. II, Inc.*, 660 F.3d at 356 (quoting *Craig Outdoor Advertising, Inc.*, 528 F.3d at 1028); *see Craig Outdoor Adver.*, 528 F.3d at 1028 ("A plaintiff may establish open-ended continuity by showing that the predicate acts themselves involve a distinct threat of long-term racketeering activity. . . ."). "Prohibited activities are related if they 'have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.'" *Handeen*, 112 F.3d at 1353 (quoting *H.J. Inc.*, 492 U.S. at 240). Where a complaint's allegations, taken as true, do not support the existence of either long-term criminal conduct or the threat thereof, dismissal is appropriate. *H.J. Inc.*, 492 U.S. at 242.

Plaintiffs fail to allege either open-ended or closed-ended continuity because they have failed to allege that each of the defendants committed two specific predicate acts. The first predicate act plaintiffs allege is that DeKoter committed mail fraud in 2006

when, acting as the Osceola County Economic Development Commission's counsel, he sent a letter, entitled "A Peace Plan For Osceola County", to members of the Osceola County Board of Supervisors. "'Though mail fraud can be a predicate act, mailings are insufficient to establish the continuity factor unless they contain misrepresentations themselves.'" *Crest Const. II, Inc.*, 660 F.3d at 356 (quoting *Dahlgren v. First Nat'l Bank of Holdrege*, 533 F.3d 681, 689 (8th Cir. 2008) (quoting in turn *Wisdom*, 167 F.3d at 407) (internal quotation marks omitted). DeKoter's letter, in which he urges that a voter referendum on the Unified Law be undertaken, does not contain any alleged misrepresentations. Accordingly, I do not consider DeKoter's 2006 letter on the issue of continuity. *See Primary Care Investors, Seven, Inc. v, PHP Healthcare Corp.*, 986 F.2d 1208, 1215 (8th Cir.1993) (refusing to consider a letter containing no indications of fraud as the beginning mail fraud predicate act); *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1414 (3d Cir. 1991) ("[T]he continuity question should not be affected by the fact that a particular fraudulent scheme involved numerous otherwise 'innocent' mailings . . . ."). All but one of the other predicate acts alleged in the Third Amended Complaint relate to Virgil's arrest in May 2009.[5] Plaintiffs allege that someone at the Osceola County Sheriff's Department caused a report of Virgil's false arrest to be broadcast on the local radio. The Third Amended Complaint, however, does not identify any defendant as causing the issuance of the report.

The next predicate act alleged by plaintiffs is wire fraud by Weber for his telephone call to Carol Van Stelton regarding Virgil's arrest. The Third Amended Complaint, however, does not disclose the contents of the conversation between Weber

---

[5]The Third Amended Complaint is unclear about the date of Virgil's arrest. In ¶ 87, it is alleged that Virgil was arrested on May 11, 2009. However, in ¶ 106, plaintiffs allege that the radio transmission concerning Virgil's arrest occurred on May 12, 2009, while in ¶ 107, plaintiffs allege that the radio transmission occurred on May 9, 2009.

and Carol. The fourth predicate act alleged in the Third Amended Complaint is an allegation of mail fraud that allegedly occurred in 2012 when Osceola County sent out real estate tax statements. The Third Amended Complaint does not identify any defendant as directly causing the issuance of the real estate tax statements. Even if this allegation can be construed as attempting to allege the predicate act of mail fraud, it fails to allege the fraud with the particularity required by Rule 9(b). *See Crest Const. II*, 660 F.3d at 353 ("Rule 9(b) requires plaintiffs to plead the who, what, when, where, and how. . . ."). Conspicuously absent is any allegation that the real estate statements contain misstatements. Accordingly, whatever the merits of plaintiffs' RICO claims in other respects, they are fatally deficient in their allegation of a pattern of racketeering activity. *See Craig Outdoor Adver.*, 528 F.3d at 1028 ("Failure to present sufficient evidence on any one element of a RICO claim means the entire claim fails."). Therefore, this portion of the Law Firm defendants' and the County defendants' motions to dismiss are granted. Plaintiffs' RICO claims are dismissed in their entirety.

### D.     First Amendment Right To Petition Claim Against The County Defendants

The County defendants also seek dismissal of plaintiffs' claim against them for violating their right to petition the government for grievances under the First Amendment.[6] The County defendants argue that plaintiffs have failed to allege a viable claim because they were ably represented by counsel in the Van Stelton Trust litigation and make no allegation about how they were denied the opportunity to attain a full and

---

[6]Plaintiffs have combined their First Amendment right to petition and tortious interference with prospective business relations claims in a single count, I will consider them separately. I will address plaintiffs' tortious interference with prospective business relations claim below with plaintiffs' other state law claims.

fair hearing in the matter. Plaintiffs counter that the County defendants are impermissibly attempting to interject facts outside of the pleadings to attack the sufficiency of their First Amendment claim and that their allegations are sufficient to state a viable First Amendment claim against the County defendants. I begin my analysis with a brief review of the governing law and the requirements for such a claim.[7]

---

[7] Plaintiffs do not mention 42 U.S.C. § 1983 in Count VI of the Third Amended Complaint. Section 1983 provides in relevant part:

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."

42 U.S.C. § 1983. The law is clear that a claim against state actors for violation of constitutional rights is not enforceable directly under the Constitution, but rather through § 1983 or other civil rights statutes. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001) (noting that "a litigant complaining of a violation of a constitutional right does not have a direct cause of action under the United States Constitution but must utilize 42 U.S.C. § 1983."); *Martin v. City of Los Angeles*, 141 F.3d 1373, 1383 (9th Cir. 1998) (observing that "a plaintiff may not sue a state defendant directly under the Constitution where § 1983 provides a remedy."); *Azul–Pacifico, Inc. v. City of Los Angeles*, 973 F.2d 704, 705 (9th Cir. 1992) ("Plaintiff has no cause of action directly under the United States Constitution. We have previously held that a litigant complaining of a violation of a constitutional right must utilize 42 U.S.C. § 1983."); *Hunt v. Robeson Cnty. Dep't of Soc. Servs.*, 816 F.2d 150, 152 n.2 (4th Cir. 1987) ("Because defendants here are all local officials, any cause of action against them for unconstitutional conduct under color of state law could only proceed under § 1983."); *see also Quality Refrigerated Servs., Inc. v. City of Spencer*, 908 F. Supp. 1471, 1492 (N.D. Iowa 1995) ("There simply is no direct cause of action arising under the Constitution itself against municipal officials for alleged

### 1. *Overview of the right to access and requirements for claim*

The First Amendment protects "the right of the people . . . to petition the Government for a redress of grievances." U.S. CONST. amend. I. "[T]he Petition Clause protects the right of individuals to appeal to courts and other forums established by the government for resolution of legal disputes. '[T]he right of access to courts for redress of wrongs is an aspect of the First Amendment right to petition the government.'" *Borough of Duryea v. Guarnieri*, 131 S. Ct. 2488, 2494 (2011) (quoting *Sure–Tan, Inc. v. NLRB*, 467 U.S. 883, 896–897 (1984)). This right "extends to all departments of the Government." *California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972). The United States Supreme Court has recognized the right to access as "one of 'the most precious of the liberties safeguarded by the Bill of Rights.'" *BE & K Constr. Co. v. NLRB*, 536 U.S. 516, 524, (2003) (quoting *United Mine Workers v. Illinois State Bar Ass'n*, 389 U.S. 217, 222 (1967)).

"In order to prevail on such a claim, a plaintiff must show that the defendants acted with some intentional motivation to restrict his access to the courts. The plaintiff must show government action was designed to prevent access to the courts." *Morris v. City of Chillicothe*, 512 F.3d 1013, 1020 (8th Cir. 2008) (citation omitted); *see Earl v. Fabian*, 956 F.3d 717, 727 (8th Cir. 2009) ("To prevail under the First Amendment a claimant typically bears the burden of proving that the defendants intentionally restricted his access to the courts."); *Scheeler v. City of St. Cloud*, 402 F.3d 826, 830 (8th Cir. 2005) (holding that in order to prevail on such a claim, plaintiffs "must show that the defendants acted with some intentional motivation to restrict their access to the

---

constitutional violations. Rather courts have held that a litigant complaining of a violation of a constitutional right must utilize 42 U.S.C. § 1983.") (citation omitted). Construing plaintiffs' pleadings liberally, and as no other civil rights statute appears to present a viable vehicle for asserting plaintiffs' First Amendment right to access claim, I construe this claim as arising under § 1983.

courts."); *Whisman v. Rinehart*, 119 F.3d 1303, 1313 (8th Cir. 1997) ("Government action designed to prevent an individual from utilizing legal remedies may infringe upon the First Amendment right to petition the courts."). The right of access cannot be impaired, either directly or indirectly. *See In re Workers' Compensation Refund*, 46 F.3d 813, 822 (8th Cir. 1995); *Harrison v. Springdale Water & Sewer Comm'n*, 780 F.2d 1422, 1428 (8th Cir. 1986). "Indirect impairment may include 'retaliatory action [taken] against an individual designed either to punish him for having exercised his constitutional right to seek judicial relief or to intimidate or chill his exercise of that right in the future.'" *In re Workers' Compensation Refund*, 46 F.3d at 822 (quoting *Harrison*, 780 F.2d at 1428). "The right applies not only to the actual denial of access to the courts, but also to situations in which the plaintiff has been denied meaningful access by some impediment put up by the defendant." *Scheeler*, 402 F.3d at 830 (citing *Alexander v. Macoubrie*, 982 F.2d 307, 308 (8th Cir. 1992)).

### 2. *Analysis*

As I noted above, "[t]o state a claim under 42 U.S.C. § 1983, a plaintiff must show that he was deprived of a right secured by the Constitution and the laws of the United States and that the deprivation was committed by a person acting under color of state law." *Alexander*, ---F.3d---, 2013 WL 3242189, at *2; see *Lind v. Midland Funding, L.L.C.*, 688 F.3d 402, 405 (8th Cir. 2012); *L.L. Nelson Enters., Inc.*, 673 F.3d at 805; *Van Zee*, 630 F.3d at 1128. As the Supreme Court has explained, to establish an access to courts claim

> the named plaintiff must identify a nonfrivolous, arguable, underlying claim. . . . It follows that the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations much describe the official acts frustrating the litigation. It follows, too, that when the access claim (like this one) looks backward, the complaint must identify a remedy that may be

awarded as recompense but not otherwise available in some suit that may yet be brought. There is, after all, no point in spending time and money to establish the facts constituting denial of access when a plaintiff would end up just as well off after litigating a simpler case without the denial-of-access element.

*Christopher v. Harbury*, 536 U.S. 403, 415 (2002).

Concerning their right to access claim, plaintiffs allege the following:

> 168. The disruption of and distraction in the state court litigation caused by the threats and intimidation of the Plaintiffs [sic] lawful claims in the Trust litigation and is a further continuation of the fraud complained herein.

> 169. The Defendants acted in concert to interfere with the Plaintiffs' state court action for fraud on the Van Stelton Trust of which the Plaintiffs were beneficiaries by maliciously interfering with their litigation rights in violation of their right to petition the government for redress of grievances which caused them a loss of prospective economic advantage, which loss was not only foreseeable, but was deliberately intended.

> 170. As a result of the combined actions of the Defendants, Plaintiffs were denied full and fair hearing in the Trust litigation, which forced them to accept less than their fair share of the estate distribution due to the fraud and breach of fiduciary duty by Jerry and Eugene Van Stelton as Defendants in concert with the Defendant DeKoter (hereinafter the Fraud Parties) prior to and during the Trust litigation.

Third Am. Complaint at ¶¶ 168-170.

I find that plaintiffs do not allege any facts showing that they suffered a specific, litigation related harm caused by the County defendants' actions. Plaintiffs have utterly failed to allege with particularity any act or acts of the County defendants which interfered with plaintiffs' trust litigation. Plaintiffs have also failed to allege with

particularity any specific claims they lost, or claims that they had which were harmed, as a result of the County defendants' conduct. Thus, plaintiffs have failed to state a viable access to courts claim against the County defendants and this portion of the County defendants' motion to dismiss is granted.

### E.    State Law Claims

#### 1.    Carol Van Stelton's slander and libel claim

The County defendants seek dismissal of plaintiff Carol Van Stelton's slander and libel claim against them for failure to state a claim upon which relief may be granted. Specifically, the County defendants assert that the Third Amended Complaint does not contain any alleged statements that were made by them, when they were published, or how they were libelous or defamatory to Carol. In response, plaintiffs do not resist this portion of the County defendants' motion. Plaintiffs state that they intended to remove any reference to Carol in Count V of the Third Amended Complaint but inadvertently did not. Therefore, this portion of the County defendants' motion to dismiss is granted, and plaintiff Carol Van Stelton's slander and libel claim is dismissed in its entirety.

#### 2.    False arrest claim against the Law Firm defendants

The Law Firm defendants also seek dismissal of Virgil's false arrest claim against them. They argue that this claim depends on the existence of a conspiracy between them and others, but plaintiffs have not properly pled such a conspiracy. Plaintiffs respond that their false arrest claim is not based on the Law Firm's involvement in a conspiracy but is grounded on their directly engaging in the tortious conduct.

Under Iowa law, false arrest is indistinguishable from false imprisonment. See *Rife v. D.T. Corner, Inc.*, 641 N.W.2d 761, 767 (Iowa 2002); *Kraft v. Bettendorf*, 359

N.W.2d 466, 469 (Iowa 1984). A claim of false arrest has two elements: "'(1) detention or restraint against one's will, and (2) unlawfulness of the detention or restraint.'" *Thomas v. Marion Cnty.*, 652 N.W.2d 183, 186 (Iowa 2002) (quoting *Kraft*, 359 N.W.2d at 469); *see Children v. Burton*, 331 N.W.2d 673, 678-79 (Iowa 1983). "'[A] private citizen at whose request, direction, or command a police officer makes an arrest without a warrant is liable if the arrest turns out to be unlawful.'" *Busch v. City of Anthon, Iowa*, 173 F. Supp.2d 876, 894 (N.D. Iowa 2001) (quoting (quoting *Dixon v. Hy-Vee, Inc.*, No. 00–1234, 2001 WL 912738, at *2 (Iowa Ct. App. Aug. 15, 2001)) (quoting in turn 32 AM.JUR.2d *False Imprisonment* § 40 (1995)). A person who instigates or participates in the unlawful arrest of another person is subject to liability to that person for false imprisonment. *Id*. Iowa courts distinguish between "merely reporting an incident or suspect, and instigating detention by authorities." *Turk v. Iowa West Racing Ass'n, Inc.*, 690 N.W.2d 695, 2004 WL 1836119, *4 (Iowa Ct. App. Aug. 11, 2004) (unpublished table decision). Instigation goes beyond a person giving information to the police about a crime's commission or accusing another of committing a crime so long as the person "leaves to the police the decision as to what shall be done about any arrest, without persuading or influencing them." *Busch*, 173 F. Supp. 2d at 895 (citing RESTATEMENT (SECOND) OF TORTS § 45A cmt. c (1965)). A person may be liable for false arrest or false imprisonment if the person supplied information to the police that he or she knew to be false. *Id.*

Plaintiffs do not allege that DeKoter directly detained or confined Virgil in any way. Instead, plaintiffs allege that Gries and Krikke alone detained and arrested Virgil. Therefore, the relevant question is whether plaintiffs have sufficiently alleged that the Law Firm defendants instigated, requested, or directed Virgil's arrest or detention by Gries and Krikke. Plaintiffs allege that DeKoter "encouraged criminal complaints" against Virgil by Jerry and Eugene in order to further their litigation position regarding

the Van Stelton Trust. Third Am. Complaint ¶ 86. Plaintiffs further allege that Virgil was arrested after he was attacked by Jerry and that "the incident was planned and executed as a pretext to seize the digital tape recorder and was arranged by Defendants [sic] Jerry Van Stelton under the advice and counsel of Defendants DeKoter and Hansen for enforcement by the Defendant Weber through Defendants Gries and Krikke, with false evidence to be supplied by Defendants. . . ." Third Am. Complaint ¶ 96(c).

I find these allegations sufficient to support a claim for false arrest against DeKoter because he is alleged to have orchestrated Virgil's warrantless arrest without probable cause. Moreover, because DeKoter is alleged to be a partner in the Law Firm at the time he advised and counseled Jerry, the allegations sufficiently allege that DeKoter's actions were committed in the course or scope of his employment. Under such circumstances, the Law Firm would be liable for DeKoter's wrongful actions. *See Walderbach v. Archdiocese of Dubuque, Inc.*, 730 N.W.2d 198, 201 (Iowa 2007) (noting that "[a] claim of vicarious liability under the doctrine of respondeat superior rests on two elements: proof of an employer/employee relationship (or employment as an independent contractor), and proof that the injury occurred within the scope of that relationship."); *Biddle v. Sartori Mem. Hosp.*, 518 N.W.2d 795, 797 (Iowa 1994) (same). Therefore, this portion of the Law Firm defendants' motion to dismiss is denied.

### 3. *Malicious prosecution claim against the Law Firm defendants*

The Law Firm defendants next seek dismissal of plaintiffs' malicious prosecution claim against them. The parties repeat the same arguments regarding the vitality of this claim that they made concerning the false arrest claim.

In order to establish a claim of malicious prosecution, a plaintiff must prove the following six elements:

> (1) a previous prosecution; (2) instigation of that prosecution by the defendant; (3) termination of the prosecution by acquittal or discharge of the plaintiff; (4) want of probable cause; (5) malice on the part of the defendant for bringing the prosecution; and (6) damage to the plaintiff.

*Wilson v. Hayes*, 464 N.W.2d 250, 259 (Iowa 1990); *see Winkel v. Von Maur, Inc.*, 652 N.W.2d 453, 460 (Iowa 2002), abrogated *in part on other grounds by Barreca v. Nickolas*, 652 N.W.2d 453 (Iowa 2004); *Royce v. Henning*, 423 N.W.2d 198, 200 (Iowa 1998); *Sarvold v. Dodson*, 237 N.W.2d 447, 448 (Iowa 1976); *see also Craig v. City of Cedar Rapids*, 826 N.W.2d 516, 2012 WL 6193862, at *4 (Iowa Ct. App. Dec. 12, 2012) (unpublished table decision); *Jackson v. Wesselink*, 758 N.W.2d 349, 2011 WL 649471, at *4 (Iowa Ct. App. Feb. 23, 2011) (unpublished table decision); *McLaughlin v. Ranschau*, 791 N.W.2d 427, 2010 WL 3503543, at * 2 (Iowa Ct. App. Set. 9, 2010) (unpublished table decision); *Schneider v. Rodgers*, 752 N.W.2d 33, 2008 WL 508481, at *3 n.2 (Iowa Ct. App. Feb. 27, 2008) (unpublished table decision).[8]

---

[8]In two stray cases, the Iowa Supreme Court identified the second element of a malicious prosecution claim as "investigation" of the prosecution by the present defendant. *See Whalen v. Connelly*, 621 N.W.2d 681, 687-88 (Iowa 2000); *Employers Mut. Cas. Co. v. Cedar Rapids Television Co.*, 552 N.W.2d 639, 643 (Iowa 1996). This metamorphosis of the second element, from "instigation" in *Wilson* to "investigation" in *Employers Mutual*, appears to have been no more than a scrivener's error since *Employers Mutual* cites *Wilson* as the sole authority for the elements of a malicious prosecution claim. *See Employers Mut. Cas. Co.*, 552 N.W.2d at 643. Moreover, the Restatement (Second) of Torts, which the Iowa Supreme Court relied in *Wilson*, defines the pertinent element as "initiation, continuation or procurement of civil proceedings against another. . . ." RESTATEMENT (SECOND) OF TORTS § 674 (1965); *see* RESTATEMENT (SECOND) OF TORTS § 681A (stating the element as "the defendant has initiated, continued or procured the civil proceedings against [the plaintiff]"). Finally, since *Whalen*, the Iowa appellate courts have referred to the second element only as "instigation" of the prosecution by the defendant. *See Winkel*, 652 N.W.2d at 460; *see also Craig*, 826 N.W.2d 516, 2012 WL 6193862, at *4; *Jackson*, 758 N.W.2d

"Malice means any wrongful act which has been wilfully and purposely done to the injury of another. There must be an improper purpose or motive. Malice may be actual, or it may be inferred from a want of probable cause." *Wilson*, 464 N.W.2d at 260 (quoting in *Brown v. Monticello State Bank*, 360 N.W.2d 81, 87 (Iowa 1984)). Probable cause is defined as:

> "One who takes an active part in the initiation, continuation or procurement of civil proceedings against another has probable cause for doing so if he reasonably believes in the existence of the facts upon which the claim is based, and either
>
> (a) correctly or reasonably believes that under those facts the claim may be valid under the applicable law, or
>
> (b) believes to this effect in reliance upon the advice of counsel, sought in good faith and given after full disclosure of all relevant facts within his knowledge and information."

*Wilson*, 464 N.W.2d at 261-62 (quoting RESTATEMENT (SECOND) OF TORTS § 675). The Iowa Supreme Court has instructed that in determining the existence of probable cause

> "[t]he important question [is not the defendant's] belief but whether all the facts, as [the defendant] knew them or should have known, were such as to justify the ordinary, reasonably prudent, careful and conscientious person in reaching such a conclusion."

*Wilson*, 464 N.W.2d at 261 (quoting *Schnathorst v. Williams*, 36 N.W.2d 739, 748 (1949)).

In their Third Amended Complaint, plaintiffs allege that Virgil was attacked by Jerry. DeKoter had actual knowledge of these facts but nonetheless directed Hansen to

349, 2011 WL 649471, at *4; *McLaughlin*, 791 N.W.2d 427, 2010 WL 3503543, at * 2; *Schneider*, 752 N.W.2d 33, 2008 WL 508481, at *3 n.2.

file a criminal charge against Virgil. Virgil was charged with assault causing bodily injury but that charge, which was not supported by probable cause, was later dismissed. Drawing all reasonable inferences in Virgil's favor, I conclude that he has adequately pled each element of malicious prosecution. *See Hamilton v. Palm*, 621 F .3d 816, 819 (8th Cir. 2010) ("A plaintiff need only allege facts that permit the reasonable inference that the defendant is liable, even if the complaint 'strikes a savvy judge that actual proof of the facts alleged is improbable' and recovery 'very remote and unlikely.'"). Therefore, this portion of the Law Firm defendants' motion to dismiss is also denied.

### 4. Defamation claim against the Law Firm defendants

The Law Firm defendants further seek dismissal of plaintiffs' defamation claim against them. As they did with Virgil's false arrest claim, the Law Firm defendants argue that this claim depends on the existence of a conspiracy between them and others, but plaintiffs have not properly pled such a conspiracy. Plaintiffs respond that their defamation claim is not based on the Law Firm's involvement in a conspiracy but are grounded on their directly engaging in the tortious conduct. The Law Firm defendants counter that plaintiffs have not alleged or identified any derogatory statements made by them which could form the basis for such a claim.

Under Iowa law, defamation is

> "is an impairment of a relational interest; it denigrates the opinion which others in the community have of the plaintiff and invades the plaintiff's interest in his reputation and good name. A cause of action for defamation is based on the transmission of derogatory statements, not any physical or emotional distress to plaintiff which may result. Defamation law protects interests of personality, not of property."

*Kiesau v. Bantz*, 686 N.W.2d 164, 175 (Iowa 2004) (quoting *Schlegel v. Ottumwa Courier*, 585 N.W.2d 217, 221 (Iowa 1998)). As I have previously explained, defamation under Iowa law consists of the "twin torts" of "libel" and "slander," where

"libel" is defined as malicious publication, expressed either in printing or in writing, or by signs and pictures, tending to injure the reputation of another person or to expose the person to public hatred, contempt, or ridicule, or to injure the person in the maintenance of the person's business, and "slander" is defined as oral publication of defamatory material. *McFarland v. McFarland*, 684 F. Supp.2d 1073, 1086 (N.D. Iowa 2010); *Park v. Hill*, 380 F.Supp.2d 1002, 1015 (N.D. Iowa 2005); *Lyons v. Midwest Glazing, L.L.C.*, 235 F.Supp.2d 1030, 1043-44 (N.D. Iowa 2002); *accord Kiesau v. Bantz*, 686 N.W.2d 164, 174 (Iowa 2004); *Barreca v. Nickolas*, 683 N.W.2d 111, 116 (Iowa 2004); *Delaney v. International Union UAW Local No. 94*, 675 N.W.2d 832, 839 (Iowa 2004); *Theisen v. Covenant Med. Ctr., Inc.*, 636 N.W.2d 74, 83 (Iowa 2001); *Johnson v. Nickerson*, 542 N.W.2d 506, 510 (Iowa 1996); *Lara v. Thomas*, 512 N.W.2d 777, 785 (Iowa 1994). In order to establish a prima facie case of defamation, the plaintiff must prove that the defendant "'(1) published a statement that (2) was defamatory (3) of and concerning the plaintiff, and (4) resulted in injury to the plaintiff.'" *Kiesau*, 686 N.W.2d at 175 (quoting *Johnson v. Nickerson*, 542 N.W.2d 506, 510 (Iowa 1996)). The Iowa Supreme Court has recognized that:

> There are two kinds of libel: libel per se and libel per quod. In statements that are libelous per se, falsity, malice, and injury are presumed and proof of these elements is not necessary. *Vinson v. Linn-Mar Cmty. Sch. Dist.*, 360 N.W.2d 108, 115-16 (Iowa 1985). "An attack on the integrity and moral character of a party is libelous per se." *Wilson v. IBP, Inc.*, 558 N.W.2d 132, 139 (Iowa 1996).

*Kiesau*, 686 N.W.2d at 175. Similarly, the Iowa Supreme Court has recognized that statements may constitute "slander per se." *Barreca*, 683 N.W.2d at 116 (cataloguing Iowa slander per se cases).

Here, accepting all allegations in the Third Amended Complaint as true and drawing all reasonable inferences in the light most favorable to plaintiffs, I conclude

that plaintiffs have not alleged sufficient facts to make out prima facie claims of libel and slander against the Law Firm defendants. Specifically, plaintiffs only allege that:

> 164. Defendants Weber, Gries and Krikke published and caused to be published stories or articles in various media that Plaintiff Virgil Van Stelton had allegedly engaged in Domestic Assault knowing that those allegations were wholly false, defamatory and without basis.

> 165. Further, the aforesaid Defendants made false and defamatory statements to each other and to third parties concerning Plaintiffs Virgil Van Stelton and Alvin Van Stelton with the intent to slander the Plaintiffs Van Stelton and cause them harm.

Third Am. Complaint at ¶¶ 164-65. The Law Firm defendants' conduct is not mentioned whatsoever. Thus, these allegations totally fail to state a cause of action for either slander or libel against the Law Firm defendants. Accordingly, this portion of the Law Firm defendants' motion to dismiss is granted.

### 5. *Tortious interference with prospective business relations claims*

Both the Law Firm defendants and the County defendants seek dismissal of plaintiffs' claim of tortious interference with prospective business relations, contending that plaintiffs have made only conclusory allegations and have not plead specific acts committed by the defendants which satisfy the elements of this claim. Plaintiffs respond that they have sufficiently identified the defendants' conduct to make out a prima facie claim of tortious interference with prospective business relations. I will first discuss the requirements for such a claim and then analyze whether the allegations sufficiently state plausible claims of tortious interference with prospective business relations against the Law Firm defendants and the County defendants.

### a.    Requirements for a claim

Under Iowa law, the elements of a claim for tortious interference with prospective business advantage are as follows:

"(1) A prospective contractual or business relationship;

(2) the defendant knew of the prospective relationship;

(3) the defendant intentionally and improperly interfered with the relationship;

(4) the defendant's interference caused the relationship to fail to materialize; and

(5) the amount of resulting damages."

*Blumenthal Inv. Trusts v. City of W. Des Moines*, 636 N.W.2d 255, 269 (Iowa 2001) (quoting *Iowa Coal Mining Co. v. Monroe Cnty.*, 555 N.W.2d 418, 438 (Iowa 1996)). "Interference with a prospective business contract is an intentional tort which requires a showing that the sole or predominant purpose of the actor's conduct was to financially injure or destroy the plaintiff." *Lorenzen Steffen Ins. Agency, Inc. v. United Fire & CAs. Co.*, 666 N.W.2d 619 (Iowa Ct. App. 2003) (citing *Economy Roofing & Insulating Co. v. Zumaris*, 538 N.W.2d 641, 651–52 (Iowa 1995)); *see Hoefer v. Wisconsin Educ. Ass'n Ins. Trust*, 470 N.W.2d 336, 341 (Iowa 1991) ("[P]laintiffs who allege tortious interference with prospective business relations are held to a strict standard of substantial proof 'that the defendant acted with a predominantly improper purpose.'" (quoting *Harsha v. State Sav. Bank*, 346 N.W.2d 791, 800 (Iowa 1984))).

### b.    Claim against the Law Firm defendants

Plaintiffs allege that:

173.    During the 2009 crop year, Defendant DeKoter maliciously interfered with the Plaintiffs Van Stelton in their effort to bid against the Defendants Van Stelton for the right to plant the Trust lands costing them the opportunity to compete for the income to be gained from that crop season.

Third Am. Complaint at ¶ 173. Plaintiffs specifically allege that Alvin, Jerry, and Eugene were trustees of the Van Stelton Trust. DeKoter was Jerry and Eugene's attorney. He was then retained as attorney for the Van Stelton Trust. In his capacity as the attorney for the Van Stelton Trust, DeKoter interfered with communications between Alvin, Virgil, and Margaret. DeKoter did so by contacting, in person and telephonically, the nursing facility staff caring for Margaret "to create suspicions in the mind of staff concerning Margaret's safety and security in the presence of Alvin and Virgil Van Stelton and her ongoing contacts with them and Carol Van Stelton." Third Am. Complaint at ¶ 68. Having interfered with communications between Alvin, Virgil, and Margaret, DeKoter exercised "undue influence" over Margaret and caused her to remove Alvin as a trustee. Third Am. Complaint at ¶ 69. After Alvin was removed as a trustee, Jerry and Eugene were able to rent farm land from the Van Stelton Trust for below market rates.

I conclude that these allegations sufficiently state a plausible claim of tortious interference with prospective business relations. It must be remembered that Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests. . . .'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Although plaintiffs' Third Amended Complaint is not as rich with detail as one might prefer, it need only set forth sufficient facts to support plausible claims. *Id.* This it does. These allegations sufficiently put the Law Firm defendants on notice of plaintiffs' tortious interference with prospective business relations claim, and the grounds upon which it rests, thereby complying with Rule 8. Accordingly, that part of the Law Firm defendants' motion to dismiss plaintiffs' tortious interference with prospective business relations claim is denied.

### c.    Claim against the County defendants

Concerning their claim against the County defendants, plaintiffs only allege that all of these defendants acted "in concert" with the other defendants to interfere with their litigation over the Van Stelton Trust.    Plaintiffs do not allege how, if at all, this interference affected the rental of the trust farmland.    Thus, I conclude that these allegations do not sufficiently state a plausible claim of tortious interference with prospective business relations against the County defendants.    Thus, the portion of the County defendants' motion to dismiss plaintiffs' tortious interference with prospective business relations claim is granted.

### 6.    Fraud/breach of fiduciary duty

The Law Firm defendants further seek dismissal of plaintiffs' fraud and breach of fiduciary duty claims against them.    The Law Firm defendants contend that these claims fail as a matter of law because DeKoter was never a trustee of the Van Stelton trust.    They alternatively argue that these claims are time-barred.    Plaintiffs respond that they have made out a viable claim for breach of fiduciary duty based on DeKoter's actions as counsel to the Van Stelton Trust.    Plaintiffs, however, do not address the Law Firm defendants' argument that these claims are barred by Iowa's statute of limitations.

Although plaintiffs have combined their fraud and breach of fiduciary duty claims in a single count, I will consider them separately because they are distinct torts with elements unique to each.

### a.    Fraud

The Iowa Supreme Court has instructed that:

> In order to prevail on a common law fraud claim the
> plaintiff must prove the following:

47

> (1) [the] defendant made a representation to the
> plaintiff, (2) the representation was false, (3) the
> representation was material, (4) the defendant knew
> the representation was false, (5) the defendant
> intended to deceive the plaintiff, (6) the plaintiff acted
> in [justifiable] reliance on the truth of the
> representation . . ., (7) the representation was a
> proximate cause of [the] plaintiff's damages, and (8)
> the amount of damages.
>
> *Spreitzer v. Hawkeye State Bank*, 779 N.W.2d 726, 735
> (Iowa 2009) (quoting *Gibson v. ITT Hartford Ins. Co.*, 621
> N.W.2d 388, 400 (Iowa 2001)).

*Diers v. Peters*, 815 N.W.2d 1, 7 (Iowa 2012) (footnote omitted).[9]   The first three
elements of the tort are "frequently treated as a single element and referred to as
fraudulent misrepresentation." *Sinnard v. Roach*, 414 N.W.2d 100, 105 (Iowa 1987).
"In alleging fraud . . . a party must state with particularity the circumstances
constituting fraud or mistake." FED. R. CIV. P. 9(b).

The allegations in the Third Amended Complaint are wholly insufficient to state
a viable claim for fraud under Rule 9(b) against the Law Firm defendants.   The
problem with plaintiffs' fraud claim is that they have pleaded no facts whatsoever

---

[9] The Iowa Supreme Court also recognized that:

> At times we have spoken in terms of seven required
> elements. *Van Sickle Const. Co. v. Wachovia Commercial
> Mortg.*, Inc., 783 N.W.2d 684, 687 (Iowa 2010). In those
> instances, we have treated the seventh and eighth elements
> above as a single element—"resulting injury and damage."
> Id.; *see also Lloyd v. Drake Univ.*, 686 N.W.2d 225, 233
> (Iowa 2004). On other occasions, we have referred to six
> elements of fraud. *See In re Marriage of Cutler*, 588
> N.W.2d 425, 430 (Iowa 1999).

*Diers*, 815 N.W.2d at 7 n.3.

regarding any false representations made by DeKoter, or other members of the Law Firm, which plaintiffs relied on to their detriment. The only statements allegedly made by DeKoter were: (1) his ordering Alvin to leave Margaret's assisted living quarters, Third Am. Complaint at ¶ 71; (2) his soliciting criminal complaints from Jerry, Eugene, and third-parties against Alvin and Virgil, *id.* at ¶¶ 79, 86; (3) his 2006 "A Peace Plan For Osceola County" letter to members of the Osceola County Board of Supervisors, *id.* at ¶ 118 & Ext A.; (4) his threatening the Osceola County Board of Supervisors with lawsuits, *id.* at ¶ 119; (5) his sending "a political mailer" to Osceola County voters which falsely alleged an association between candidate Edward Jones and OCTA consultant Paul Dorr, *id.* at ¶ 125(a); (6) his admission that he sent the mailing, *id.* at ¶ 125(c); (7) his sending an email to the City of Sibley and Sibley businesses on November 7, 2012, in which "he admits his 'political' activities. . . .", *id.* at ¶ 125(d); and, (8) his sending an email to Edward Jones's wife in which "she was told that if she was helping her husband, 'Heaven help you.'", *id.* at ¶ 131. I find that the Third Amended Complaint fails entirely to allege that plaintiffs relied, in any way, on any of these statements to their detriment. Therefore, plaintiffs have failed to sufficiently plead a common law fraud claim against the Law Firm defendants, and this portion of the Law Firm defendants' motion to dismiss is also granted.

### b. *Breach of fiduciary duty*

Under Iowa law, to establish a breach of fiduciary duty, the plaintiffs must demonstrate the following elements: (1) the defendant owed the plaintiff a fiduciary duty; (2) the defendant breached this fiduciary duty; (3) the breach of the fiduciary duty was a proximate cause of the plaintiff's damages; and (4) the amount of damages. *See Asa–Brandt, Inc. v. ADM Investor Servs.*, 344 F.3d 738, 744 (8th Cir. 2003) (applying Iowa law); *NCMIC Fin. Corp. v. Artino*, 638 F. Supp. 2d 1042, 1082 (S.D. Iowa 2009) (same); *Top of Iowa Co-op. v. Schewe*, 149 F.Supp.2d 709, 717 (N.D. Iowa

2001) (same); *see also Greene v. Heithoff*, 808 N.W.2d 754, 2011 WL 5515167, at \*10 (Iowa Ct. App. Nov. 9, 2011) (unpublished table discision); *Unterberger v. Bresnahan*, 789 N.W.2d 164, 2010 WL 2925843, at \*3 (Iowa Ct. App. July 28, 2010) (unpublished table decision). It is well established that "[a] trustee owes a duty of loyalty to the trust and to its beneficiaries and must act in good faith in all actions affecting the trust." *Schildberg v. Schildberg*, 461 N.W.2d 186, 191-92 (Iowa 1990); *accord Harvey v. Leonard*, 268 N.W.2d 504, 512 (Iowa 1978); *In re Thompson Trust*, 801 N.W.2d 23, 26 (Iowa Ct. App. 2011). "'[A]s a general rule trustees are prohibited from engaging in self-dealing transactions with the trust and from obtaining personal advantage from their dealings with trust property.'" *Orud v. Groth*, 708 N.W.2d 72, 79 (Iowa 2006) (quoting *Harvey*, 268 N.W.2d at 512); *accord Coster v. Crookham*, 468 N.W.2d 802, 806 (Iowa 1991) (stating a "'trustee violates his duty to the beneficiary . . . where he uses the trust property for his own purposes'" (quoting RESTATEMENT (SECOND) OF TRUSTS § 170 cmt. 1 )). DeKoter is not alleged to have ever been a trustee of the Van Stelton Trust. Instead, plaintiffs allege that he "was retained as attorney for the Trust."[10] Third Am. Complaint at ¶ 66. However, the Iowa Supreme Court has "recognized that a third party may be liable for a trustee's breach of fiduciary duty." *Orud*, 708 N.W.2d at 80; *see Coster v. Crookham*, 468 N.W.2d 802, 809 (Iowa 1991). The Iowa Supreme Court has quoted approvingly the following rule from the Restatement (Second) of Trusts:

> "'A third person who, although not a transferee of trust property, has notice that the trustee is committing a breach of trust and participates therein is liable to the beneficiary for any loss caused by the breach of trust.'"

---

[10]While DeKoter is alleged to have represented both Jerry and Eugene before he was retained to work on trust matters, the Third Amended Complaint does not disclose who actually retained DeKoter for this work.

*Orud*, 708 N.W.2d at 80 (quoting *Coster*, 468 N.W.2d at 809 (quoting in turn RESTATEMENT (SECOND) OF TRUSTS § 326, at 124). Here, plaintiffs allege Jerry and Eugene, as trustees of the Van Stelton Trust, engaged in self-dealing by renting trust farm land to themselves at below market rates. Plaintiffs further allege that DeKoter actively participated with Jerry and Eugene by interfering and blocking communications between Margaret, Alvin, and Virgil which may have revealed the self-dealing. Accordingly, plaintiffs have stated a claim for aiding and abetting the breach of a fiduciary duty against the Law Firm defendants. This conclusion requires me to next address the Law Firm defendants' alternative argument that plaintiffs' breach of fiduciary duty claim is barred by Iowa's statute of limitations.

Iowa law bars a claim for a breach of trust by a beneficiary

> who has received a final account or other report adequately disclosing the existence of the claim, unless a proceeding to assert the claim is commenced within one year after the earlier of the receipt of the accounting or report of the termination of the trust relationship between the trustee and beneficiary.

IOWA CODE § 633A.4504(1). For the Law Firm defendants to prevail on their statute of limitations argument, they must establish the following: (1) plaintiffs were beneficiaries of the Van Stelton Trust; (2) the claim against Jerry and Eugene is for a breach of trust; (3) plaintiffs received an accounting or other report adequately disclosing the existence of the claim; and (4) plaintiffs failed to commence this action within one year after the receipt of this accounting or report. *See Turner v. Iowa State Bank & Trust Co.*, 743 N.W.2d 1, 5 (Iowa 2007). The Third Amended Complaint contains insufficient details for me to determine, as a matter of law, that plaintiffs' breach of fiduciary duty claim against the Law Firm defendants is barred by Iowa's statute of limitations. Specifically, the Third Amended Complaint does not disclose when, if ever, plaintiffs received an accounting or other report adequately disclosing

the existence of their claim against Jerry and Eugene for self-dealing. Accordingly, this issue cannot be resolved on a motion to dismiss but rather must await summary judgment or trial, and this portion of the Law Firm defendants' motion to dismiss is denied.

### 7. *Ongoing criminal conduct*

Both the County defendants and the Law Firm defendants challenge plaintiffs' Ongoing Criminal Conduct claim against them. The County defendants argue that plaintiffs' OCC claim fails because plaintiffs have not alleged criminal activity that occurred or will occur on a continuing basis, a necessary element for such a claim. *See* IOWA CODE § 706A.1(1). The Law Firm defendants similarly argue that plaintiffs' OCC claim is insufficient because plaintiffs have failed to plead underlying criminal conduct sufficient to support such a claim. Plaintiffs respond that they have sufficiently plead wire and mail fraud violations to support their OCC claims against these defendants. I begin my analysis with a review of Iowa's OCC statute.

#### a. *Overview of the OCC*

In 1996, the Iowa legislature enacted the OCC.[11] *State v. Olsen*, 618 N.W.2d 346, 348 (Iowa 2000). "The basic goal of the model act was to defend legitimate commerce from organized criminal activity and remedy the economic effects of crime." *Id.* at 348. The OCC allows an "aggrieved person" to file a civil action against any person violating the statute. *See* IOWA CODE § 706A.3(1). Plaintiffs allege that both

---

[11] Iowa's OCC was patterned after the Model Ongoing Criminal Conduct Act, § 2 (1993). *See State v. Olsen*, 618 N.W.2d 346, 348 (Iowa 2000); 4 IOWA PRACTICE SERIES, CRIMINAL LAW § 12.1 (2012-13 ed.). "Iowa is the only state in the nation to enact an ongoing criminal conduct statute." *Olsen*, 618 N.W.2d at 348 n.1; *see* 4 IOWA PRACTICE SERIES, CRIMINAL LAW § 12.1 ("Iowa is the only state to adopt the act.").

the County defendants and the Law Firm defendants violated Iowa Code § 706A.2(2)(a). That section provides:

> 2. Facilitation of a criminal network. It is unlawful for a person acting with knowledge of the financial goals and criminal objectives of a criminal network to knowingly facilitate criminal objectives of the network by doing any of the following:
>
> a. Engaging in violence or intimidation or inciting or inducing another to engage in violence or intimidation.

IOWA CODE § 706A.2(2)(a). The OCC defines "criminal network" as:

> any combination of persons engaging, for financial gain on a continuing basis, in conduct which is an indictable offense under the laws of this state regardless of whether such conduct is charged or indicted. As used in this subsection, persons combine if they collaborate or act in concert in carrying on or furthering the activities or purposes of a network even though such persons may not know each other's identity, membership in the network changes from time to time, or one or more members of the network stand in a wholesaler-retailer, service provider, or other arm's length relationship with others as to conduct in the furtherance of the financial goals of the network.

Iowa Code 706A.1(1). "Although 'financial gain' is not defined by the [sic] chapter 706A, we read the statute to require only proof that a defendant's purpose was for financial gain, not that he or she actually received financial gain." *Day v. State*, No. 12-1790, 2013 WL 2373264, at *2 (Iowa Ct. App. May 30, 2013). The Iowa Supreme Court has further instructed that

> Given the similarity between the underlying purposes of RICO and Iowa Code chapter 706A, we think the interpretation given to "pattern of racketeering activity" by the United States Supreme Court in *H.J.* is a reasonable one for "continuing basis" in [the OCC].

*State v. Reed*, 618 N.W.2d 327, 335 (Iowa 2000). Thus, to satisfy the OCC's "continuing basis" requirement, plaintiffs must allege two or more related acts of criminal activity that "have the same or similar purpose." *See Id.*: *see also State v. Russell*, 781 N.W.2d 303, 2010 WL 786207, at *1 (Iowa Ct. App. March 10, 2010) (unpublished table decision).

### b.    Analysis

For the reasons I discussed above in finding that plaintiffs failed to sufficiently allege a pattern of racketeering activity under RICO, due to their failure to allege that each of the defendants committed two specific predicate acts, I also find that plaintiffs have failed to sufficiently allege that either the County defendants or the Law Firm defendants engaged in criminal activity on a continuing basis under the OCC. Therefore, this portion of the Law Firm defendants' and the County defendants' motions to dismiss are granted, and plaintiffs' OCC claims are dismissed in their entirety.

### F.    The City Of Sibley's Motion

Plaintiffs seek only declaratory judgment and/or injunctive relief against the City of Sibley. Sibley argues that both declaratory judgment and injunctive relief require a viable underlying cause of action, but plaintiffs have failed to allege any such viable underlying cause of action against it. As a result, Sibley contends that the Third Amended Complaint fails to state a claim against it for which relief can be granted. Plaintiffs respond that Sibley is a necessary party for plaintiffs to obtain complete relief and in order for Sibley to protect its interests regarding the allocation of taxes. Plaintiffs further argue that although facts exist to support an unjust enrichment claim against Sibley, they have not plead it out of courtesy to Sibley. Notwithstanding plaintiffs' arguments that Sibley is a necessary party, plaintiffs alternatively state that

they do not object to Sibley's dismissal in accordance with Sibley's request. Because plaintiffs do not object to the dismissal of Sibley, Sibley's motion to dismiss is granted.

### III. CONCLUSION

For the reasons stated above, it is ordered that:

1. The County defendants' motion to dismiss is granted, and the following claims against the County defendants are dismissed:

   a. the RICO claim;

   b. the First Amendment right to petition claim;

   c. Carol Van Stelton's slander and libel claim;

   d. the tortious interference with prospective business relations claim;

   e. the OCC claim.

2. The Law Firm defendants' motion to dismiss is granted in part and denied in part, as follows:

   a. That part of the motion seeking dismissal of the § 1983 claims against DeKoter is denied;

   b. That part of the motion seeking dismissal of the § 1983 claims against the Law Firm is granted;

   c. That part of the motion seeking dismissal of the RICO claims is granted;

   d. That part of the motion seeking dismissal of Virgil Van Stelton's false arrest claim is denied;

   e. That part of the motion seeking dismissal of the malicious prosecution claim is denied;

   f. That part of the motion seeking dismissal of the defamation claim against them is granted;

g. That part of the motion seeking dismissal of the tortious interference with prospective business relations is denied;

h. That part of the motion seeking dismissal of the fraud claims is granted;

i. That part of the motion seeking dismissal of the breach of fiduciary duty claim is denied;

j. That part of the motion seeking dismissal of the OCC claim is granted.

3. The City of Sibley's motion to dismiss is granted.

   **IT IS SO ORDERED**.

**DATED** this 17th day of July, 2013.

_Mark W. Bennett_
_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA