**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

VIRGIL VAN STELTON, CAROL VAN STELTON, AND ALVIN VAN STELTON,

              Plaintiffs,

vs.

JERRY VAN STELTON, DONNA VAN STELTON, EUGENE VAN STELTON, GARY CHRISTIANS, DOUG WEBER, SCOTT GRIES, NATE KRIKKE, ROBERT E. HANSEN, DANIEL DEKOTER, OSCEOLA COUNTY, IOWA, AND DEKOTER, THOLE AND DAWSON, P.C.

              Defendants.

No. C11-4045-MWB

**MEMORANDUM OPINION AND ORDER REGARDING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

_____

**TABLE OF CONTENTS**

**I.   INTRODUCTION AND BACKGROUND**................................................. 3
    **A.   Factual Background** ........................................................... 3
        *1.   The parties*.................................................................. 3
        *2.   The Law Firm's involvement in the Trust* ........................... 4
        *3.   State court litigation* ...................................................... 6
        *4.   County defendants' actions concerning Margaret* ................... 7
        *5.   State court litigation* ...................................................... 8
        *6.   Virgil's arrest* .............................................................. 9
        *7.   Virgil's tape recorder* .................................................. 13
    **B.   Procedural Background** ..................................................... 13

**II.  LEGAL ANALSYIS** ..................................................................... 15
    **A.   Summary Judgment Standards**............................................. 15
    **B.   Section 1983 Claims**......................................................... 18
        *1.   Requirements for § 1983 claim* ....................................... 18

2.      *Under color of state law requirement*............................... 20
3.      *Section 1983 claims against the County defendants* ............... 23
      *a.*    *First Amendment claims* .................................... 23
            *i.*    *Virgil's arrest* ....................................... 24
            *ii.*   *Family association* .................................. 24
      *b.*   *Fourth Amendment claims* ................................ 26
             *i.*    *Virgil's warrantless arrest* ........................... 26
            *ii.*   *Search of tape recorder* ............................. 29
      *c.*    *Fifth Amendment claims* ................................... 32
      *d.*   *Fourteenth Amendment claims* ............................ 32
      *e.*    *Constitutional claims against Osceola County* ........... 34
C.    **State Law Claims** ................................................. 34
    1.   *False arrest* ................................................... 35
      *a.*    *Requirements for false arrest claim* ....................... 35
      *b.*   *The County defendants* .................................. 36
      *c.*    *The Law Firm defendants* ................................ 36
      *d.*   *Van Stelton defendants* .................................. 37
    2.   *Malicious prosecution* ......................................... 39
      *a.*    *Requirements for malicious prosecution claim* ............. 39
      *b.*   *Analysis of claims* ...................................... 41
    3.   *Defamation* ................................................... 41
      *a.*    *Requirements for defamation claims* ....................... 41
      *b.*   *Analysis of claims* ...................................... 44
    4.   *Breach of fiduciary duty* ....................................... 45
      *a.*    *Requirements of breach of fiduciary duty claims* .......... 45
      *b.*   *Analysis of claims* ...................................... 45
             *i.*    *The Law Firm defendants* ............................ 46
            *ii.*   *The Van Stelton defendants* .......................... 46
    5.   *Interference with prospective business advantage* ................. 51
      *a.*    *Requirements for claim* .................................. 51
      *b.*   *Analysis of claim* ....................................... 52

III.    *CONCLUSION* ................................................. 53

Plaintiffs brought a panoply of claims against defendants, including claims for civil rights violations under 42 U.S.C. § 1983; violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.*; and pendent state law claims for false arrest, malicious prosecution, slander and libel, and tortious interference with prospective business advantage. I granted portions of defendants' motions to dismiss for failing to adequately state viable claims under Federal or Iowa law. Defendants have now moved for summary judgment on plaintiffs' remaining claims. Plaintiffs resist defendants' motions, asserting that a reasonable jury could find in their favor on all of their remaining claims.

## I.    INTRODUCTION AND BACKGROUND

### A.    *Factual Background*

I set out only those facts, disputed and undisputed, sufficient to put in context the parties' arguments concerning the defendants' motions for summary judgment and resistances to them. At least for the purposes of summary judgment, the facts recited here are undisputed.[1] I will discuss additional factual allegations, and the extent to which they are or are not disputed or material, if necessary, in my legal analysis.

### 1.    *The parties*

Plaintiffs Virgil Van Stelton and his wife, plaintiff Carol Van Stelton, are residents of Iowa. They both live in Sibley, Iowa, which is located in Osceola County. Plaintiff

---

[1]Plaintiffs have failed to file a separate statement of additional material facts as required by Local Rule 56(b)(3). Instead, plaintiffs appear to state additional facts within some of their responses to the Law Firm defendants' and the County defendants' statements of material facts. I have considered those materials only for the purpose of determining whether they generate genuine issues of material fact when considered in conjunction with the Law Firm defendants' and the County defendants' statements of material facts.

Alvin Van Stelton is also a resident of Iowa. He lives in Ashton, Iowa, which is also located in Osceola County. Defendants Jerry Van Stelton, Donna Van Stelton, and Eugene Van Stelton are residents of Iowa, all living in Sibley. Virgil, Alvin, Jerry, and Eugene are brothers. Jacob Van Stelton and Margaret Van Stelton were their father and step-mother.

Defendants Gary Christians, Doug Weber, Scott Gries, Nate Krikke, Robert E. Hansen, and Daniel E. DeKoter are also residents of Iowa. Weber is the Osceola County Sheriff. Hansen is the Osceola County Attorney. DeKoter is an attorney in private practice in Sibley, Iowa. He has worked for the same law firm, now called DeKoter, Thole, and Dawson, P.L.C. ("the Law Firm"), for thirty-three years. He and Harold D. Dawson are partners in the Law Firm. Dawson also was one member of a seven-person panel that recommends salary rates for elected officials in Osceola County. DeKoter is legal counsel for the Osceola County Economic Development Commission. The Osceola County Economic Development Commission provides economic development funds to business interests in Osceola County through banks in Sibley.

### 2. The Law Firm's involvement in the Trust

In his practice, DeKoter represented Margaret Van Stelton, the stepmother of Virgil, Alvin, Jerry, and Eugene Van Stelton, regarding the management of her personal affairs. These affairs included a revocable trust ("the Trust") established by her and her late husband, Jacob Van Stelton.[2] Prior to March 29, 2007, the Trust property included farmland, annuities, and cash from rents paid to the trustees for the farmland. The cash rents were paid to Margaret as income. During her lifetime, Margaret remained competent to manage the Trust's assets in her role as the Trust grantor. While DeKoter represented Margaret with regard to management of the Trust, DeKoter did not have an

---

[2]DeKoter was not the drafter of the original Trust documents.

attorney-client relationship with any of the Van Stelton brothers regarding their interest in the Trust.

On March 23, 2007, Sheriff Weber received a report that Virgil was harassing Margaret while she was living in the Viola home. Virgil was reported a second time for harassing Margaret on May 7, 2008, while she resided at County View Manor. DeKoter did not instigate, incite, or direct the complaining witnesses to make these reports to the Osceola County Sheriff's office.

On March 29, 2007, DeKoter had a meeting with Margaret, at her apartment in the Viola Home in Sibley, Iowa. The meeting concerned the removal of Alvin as a trustee of the Trust. When DeKoter arrived at Margaret's apartment, Alvin was there. When asked to leave so that DeKoter and Margaret could speak privately, Alvin initially left but then burst back into the room and told Margaret not to remove him as a trustee.

As one of three co-trustees of the Trust, Alvin's signature was required to transfer family lands from the Trust to the four Van Stelton brothers, in equal shares. This transfer was consistent with Margaret's wishes and the terms of the Trust. Alvin refused to sign the required deeds to complete the transfer. As a result, Alvin was removed as a co-trustee so that the transfer could be completed. After Alvin was removed as a trustee, all of the family lands held in the Trust were deeded to Virgil, Alvin, Jerry, and Eugene in equal shares, and all of the family lands that were held by Jacob in a life estate were also transferred to Virgil, Alvin, Jerry, and Eugene. Subsequently, all of the family land was titled in the four brothers' names as tenants in common.

In addition to ensuring that the family lands were transferred to the four Van Stelton brothers after Jacob's death, DeKoter drafted an amendment to the Trust, at Margaret's request. Under this amendment, the cash remaining in the Trust at the time of Margaret's death would not be given in equal shares to the four brothers but instead would be given to just Virgil and Alvin. Jerry and Eugene were excluded from this

transfer. The amendment was to compensate Virgil and Alvin for their claim that the rents for the family land were underpaid by Jerry and Eugene. Margaret also made cash gifts to Virgil and Alvin.

After the family lands were transferred to the four Van Stelton brothers in March, 2007, Alvin and Virgil filed a claim against the Trust. On October 3, 2007, Alvin and Virgil's claim was disallowed and they were advised that their claim would be "forever barred unless suit is filed against the trustee to enforce the claim within thirty days of the date of this notice of disallowance." Letter at 2; Law Firm Defendants' Appendix at 347. After the claim was denied, litigation ensued over the proper partition of the property and the right to farm the land.

### 3. *State court litigation*

On October 30, 2007, Alvin Van Stelton and Virgil Van Stelton filed a petition at law in the Iowa District Court for Osceola County, case no. LACV017464 ("the '464 case). They named as defendants Van Stelton Farms, Ltd., Van Stelton Brothers, Jerry Van Stelton, individually and as trustee of the Jacob and Margaret Van Stelton Revocable Trust, Eugene Van Stelton, individually and as trustee of the Jacob and Margaret Van Stelton Revocable Trust, John Doe, and other unknown other defendants. Virgil and Alvin filed the lawsuit to enforce their claim against the Trust. On October 30, 2007, Russell Kasch became the Trust's sole trustee.

On May 15, 2008, Eugene and Jerry filed a petition in equity for partition of real estate in Iowa District Court for Osceola County, case no. EQCV017654 ("the '654 case). On October 10, 2008, Virgil and Alvin filed their answer, affirmative defenses, counter claim, and third party petition in the '654 case. On January 14, 2010, Alvin, Virgil, Eugene, and Jerry attended a mediation in the two cases. Virgil and Alvin were represented by attorney John Werden. Jerry and Eugene were represented by attorney Ronald Shea. DeKoter did not represent Margaret, or any of the four Van Stelton

6

brothers, in that litigation. DeKoter never had any communications with Sheriff Doug Weber or County Attorney Robert Hansen about any of the Van Stelton real estate matters.

On March 19, 2010, Virgil and Alvin dismissed with prejudice their claims against Eugene, Jerry, Van Stelton Brothers, and Van Stelton Farms, Ltd. in both cases. Under the terms of the settlement, Virgil retained his right to sue for false arrest and assault against DeKoter and Sheriff Weber.

After the Van Stelton brothers' litigation was concluded, Virgil and Alvin received a larger share of Margaret's money and land than they would have otherwise inherited under the Trust's terms. Neither Virgil nor Alvin had the right to collect rent on lands held by the Trust during Margaret's lifetime.

While the Trust litigation was ongoing, an annual report was filed on February 3, 2009. Virgil and Alvin received notice of the filing of the annual report, and objected to the report based on allegations raised in their pending lawsuit against the Trust. The Trust's annual report in 2009 was approved over Virgil and Alvin's objections.

On May 27, 2010, after the Trust litigation concluded, a final report of the Trust's receipts, expenses, and distributions was filed by Kasch. On that same day, notice of the filing of the Trust's final report, and a copy of the final report, was mailed to Virgil, Alvin, and their counsel at the time, John Werden. The trustee's final report was approved on July 6, 2010. On July 16, 2010, after receiving a supplemental report from the trustee indicating that the remaining assets of the Trust had been distributed as proposed in the final report, the Trust was declared closed.

### 4. *County defendants' actions concerning Margaret*

In March 2007, Margaret reported to the sheriff's office that Virgil had been harassing her. At some point when Margaret lived at the Viola Home, Jerry called Sheriff Weber and told him that Alvin was harassing Margaret. Sheriff Weber went to the Viola

Home and spoke to Margaret. Margaret told Weber that Alvin was a "good boy", but that Virgil "causes trouble." On May 7, 2008, Laura Van Sloten, the administrator of County View Manor, called Sheriff Weber and told him that Virgil was upsetting Margaret and that Margaret did not want Virgil there. Sheriff Weber had Deputy Gries call Virgil's home. On May 7, 2008, Deputy Gries called Virgil's home and spoke to Carol. Gries told her to tell Virgil that the nursing home didn't want Virgil there. The following day, May 9, 2008, Virgil came to the Sheriff's office to discuss Gries's call. Virgil was told that he was not welcome at County View Manor and that he was not to have any contact with Margaret and that if he did, he would be arrested.[3]

### 5. *State court litigation*

On October 30, 2007, Alvin Van Stelton and Virgil Van Stelton filed a petition at law in the Iowa District Court for Osceola County, case no. LACV017464 ("the '464 case). They named as defendants Van Stelton Farms, Ltd., Van Stelton Brothers, Jerry Van Stelton, individually and as trustee of the Jacob and Margaret Van Stelton Revocable Trust, Eugene Van Stelton, individually and as trustee of the Jacob and Margaret Van Stelton Revocable Trust, John Doe, and other unknown defendants. On May 15, 2008, Eugene and Jerry filed a petition in equity for partition of real estate in Iowa District Court for Osceola County, case no. EQCV017654 ("the '654 case). On October 10, 2008, Virgil and Alvin filed their answer, affirmative defenses, counterclaim, and third party petition in the '654 case. On January 14, 2010, Alvin, Virgil, Eugene, and Jerry attended a mediation in the two cases. Virgil and Alvin were represented by attorney John Werden. Jerry and Eugene were represented by attorney Ronald Shea.

On March 19, 2010, Virgil and Alvin dismissed with prejudice their claims against Eugene, Jerry, Van Stelton Brothers, and Van Stelton Farms, Ltd. in both cases. Under

---

[3] At no time was Alvin prohibited by Sheriff Weber or any of the County defendants from communicating with Margaret.

8

the terms of the settlement, Virgil retained his right to sue for false arrest and assault against DeKoter and Sheriff Weber.

### 6. Virgil's arrest

Sheriff Weber and his deputies did not take direction from DeKoter on matters related to law enforcement. County Attorney Hansen did not take direction from DeKoter on matters related to law enforcement or criminal prosecution.

On May 11, 2009, Virgil was arrested by Osceola County Deputy Sheriffs Nate Krikke and Scott Gries on suspicion of assault and trespassing. Virgil's arrest arose out of an altercation between him and Jerry on May 11, 2009. Virgil went to Jerry's farm because he wanted to speak with Gary Christians about the ongoing dispute between Virgil and his brothers. The confrontation between Virgil and Jerry escalated to the point where Virgil took Jerry to the ground and put him in a chokehold. Christians was there, but was not involved in the altercation. After the altercation, Jerry contacted the Osceola County Sheriff's Department and Deputies Gries and Krikke were dispatched to investigate the incident, and advised that "the Van Stelton brothers are fighting." Krikke Dep. at 9; the County defendants' App. at 52. The deputies spoke to Virgil, Jerry, and Christians.[4] Virgil told the deputies that he took Jerry to the ground. Virgil also admitted

---

[4]Plaintiffs contend that Gries and Krikke's police reports are inadmissible hearsay without an available exception. Plaintiffs' argument, however, does not take into account police reports are admissible, at least in part, under an exception to the hearsay rule as public records that set forth factual findings from a legally authorized investigation. *See* FED. R. EVID. 803(8)(A)(iii). Such reports are presumed to be trustworthy and admissible; therefore, [t]he party opposing the admission of the matter reported as a public record has the burden of proving lack of trustworthiness." *Simmons v. Chicago and Nw. Transp. Co.*, 993 F.2d 1326, 1328 (8th Cir. 1993), quoting *Faries v. Atlas Truck Body Mtg. Co.*, 797 F.2d 619, 622 (8th Cir. 1986); *see Moss v. Ole South Real Estate, Inc.*, 933 F.2d 1300, 1305 (5th Cir. 1991)). Plaintiffs have not met that burden. They have offered no reason why Gries and Krikke's reports should be considered untrustworthy. Even if I construe plaintiffs' objection to these reports on the ground that

that he was on Jerry's land. The deputies saw visible injuries to Jerry's neck.[5] Virgil admitted that he put Jerry in a chokehold and that Jerry suffered a physical injury as a result.[6] Jerry told Deputy Gries that he told Virgil to stay at the field driveway while he

_____

they contain "double hearsay" statements of witnesses, Virgil's statements to the deputies constitute admissions by an opposing party. *See* FED. R. EVID. 801(d)(2)(A).

[5]Plaintiffs challenge my consideration of photocopies of photographs of Jerry's neck taken by either Gries or Krikke under the Best Evidence Rule, Federal Rule of Evidence 1002. That rule, however, is satisfied here. The Best Evidence Rule requires the use of an original writing, recording, or photograph, but a copy of a photograph is a "duplicate" admissible "to the same extent as the original unless a genuine issue is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate." FED. R. EVID. 1003. Plaintiffs have not challenged the original photograph's authenticity nor have they alleged any circumstances making it unfair for me to consider the duplicate photographs.

[6]In support of this statement, the Law Firm defendants cite a portion of Virgil's deposition in which the following colloquy occurred:

> Q    Do you recall why they were taking pictures of his neck?
>
> A    Because he got –because there's a mark here, and there's a mark here (indicating), I believe.
>
> Q    And do you know how those marks ended up on his neck?
>
> A    Yes.
>
> Q.   How?
>
> A.   When I had to take him – or when he handed me his head, I took him down like this (indicating) on the ground, and I have got him in a position, then all of a sudden, boom, boom. That's the way we wound up, and he provoked the thing before that, and then provoked it by taking my tape recorder.

and Christians went out into the filed to shut off a tractor.  The deputies' investigation indicated that Virgil had assaulted Jerry after going onto Jerry's farm.  After speaking with Virgil, Jerry, and Christians, the deputies arrested Virgil.  Deputy Gries told Virgil he was under arrest for assault and trespassing.  In booking, the assault charge was listed as "domestic assault."  Sometime later it was changed to simple assault.  Regardless of whether Virgil's assault charge was classified as "simple" or "domestic," under Osceola County policy, he was required to go before a magistrate prior to release.

On May 12, 2009, local news media released information about Virgil's arrest. KIWA, a Sheldon radio station, reported:

> A sibley man is behind bars for an incident on Monday.  The Osceola County Sheriff's office reports that on Monday, May 11, they arrested 63-year-old Virgil Van Stelton of Sibley for Domestic     Assault    and    Trespassing,    both    Simple

---

> Q.     I'm going to stop you right there because that's going way beyond my question.  Would you agree then, based on your testimony, that these injuries on Jerry's neck were caused by you pursuant to the incident in –
>
> > MS.  NORA:  Object to form.
>
> Q     -May of 2009?  Did you cause these injuries to Jerry's neck?
>
> > MS.  NORA:  Objection to form.  Go ahead and answer.
>
> A.     Yes.

Virgil's Dep. at 42-43; The Law Firm defendants' App. at 69.  Plaintiffs dispute this fact, and cite to all of their responses to all of the Law Firm defendants' statement of facts and Virgil's declaration that all of the factual statements in plaintiffs' responses to the Law Firm defendants' statement of facts are true, "to the best of my knowledge, information and belief."  Plaintiffs' App. at 2.  Plaintiffs' citations fail to identify specific facts in the record which would generate a genuine issue of material fact for trial.

> Misdemeanors. Van Stelton is being held in the Osceola
> County Jail on a $600 cash bond.

News Report at 1, County defendants' App. at 15. Neither Alvin nor Carol were mentioned in the news reports about the incident.

DeKoter did not encourage Jerry to incite the incident with Virgil. DeKoter did not provide any information to the sheriff's office about the incident. DeKoter was unaware of the incident between Virgil and Jerry until after it occurred.

On May 12, 2009, Deputy Gries filed two Complaint and Affidavit forms with the Iowa District Court, alleging that Virgil committed an assault and a trespass during the May 11, 2009, incident. On May 12, 2009, a state magistrate found probable cause to believe that Virgil had committed an assault and a trespass. On May 14, 2009, County Attorney Hansen later amended the assault charge to assault causing bodily injury. On May 18, 2009, a state magistrate found that there was probable cause to support the amended charge. On May 26, 2009, a trial information charging Virgil with assault causing bodily injury was reviewed and approved by an Iowa district court judge.

Virgil did not challenge the legality of his arrest during his state court criminal proceeding, and did not ask the court to set aside the trial information for lack of probable cause. Hansen ultimately dropped the charges against Virgil in the exercise of his prosecutorial discretion following the deposition of Jerry.

After Virgil's arrest, DeKoter contacted Hansen regarding the status of the criminal case. DeKoter did this as a courtesy to Jerry. DeKoter and Hansen exchanged information about the incident and charges and then did not speak again about matters concerning the Van Steltons until this lawsuit was filed. DeKoter does not remember ever contacting anyone at the Osceola County Sheriff's office about restricting or limiting Virgil's contact with Margaret. Neither Virgil nor Alvin lost any rights under the Trust

because of Virgil's arrest.  None of the County defendants have retaliated against Carol for anything she has said.

### 7.     *Virgil's tape recorder*

A tape recorder that Virgil had during his confrontation with Jerry was seized by Deputies Gries and Krikke.  Virgil asked the deputies if they had found his recorder. When Virgil was told that they had it, Virgil asked if it was turned on when they found it.  Virgil told the deputies that there should be some pretty good evidence on it.  When Deputy Gries asked Virgil if he wanted to give a statement, Virgil replied:  "You have my tape recorder, don't you."  Krikke Dep. at 94; County defendants' App. at 78.  From this series of questions and Virgil's response when he was asked if he wanted to give a statement, the deputies thought that Virgil had consented to their listening to that portion of the tape recording that concerned the incident with Jerry.  One or both of the deputies listened to that portion of the recording, without first securing a search warrant.  Virgil never filed a motion to suppress the contents of the tape recording in his criminal case.


## B.     Procedural Background

On May 11, 2011, plaintiffs filed their initial *pro se* Complaint.  The Complaint contained the following claims:  (1) civil rights violation claims under 42 U.S.C. § 1983 by all plaintiffs; (2) claims by Virgil Van Stelton for false arrest, malicious prosecution, and loss of consortium; (3) claims by Virgil Van Stelton and Alvin Van Stelton for intentional infliction of emotional distress, slander, and "interference with Right to Petition for Redress of Grievances."

On January 6, 2012, plaintiffs filed their Amended Complaint.  The Amended Complaint added Carol Van Stelton's claims for intentional infliction of emotional distress, loss of consortium, and slander.  After plaintiffs retained counsel, plaintiffs sought and were granted leave to file a Second Amended Complaint on November 9,

2012.  The Second Amended Complaint contained additional factual allegations and added the City of Sibley as a defendant.  Generally, the Second Amended Complaint alleges that Hansen and Weber abused the power of their official positions by acting in concert with the other defendants, their friends, and clients.  The Second Amended Complaint contains the following claims:  (1)  civil rights violations under 42 U.S.C. § 1983; (2) violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.*; (3) pendent state law claims for false arrest, malicious prosecution, slander and libel, tortious interference with prospective business advantage, and declaratory judgment and injunctive relief.

Defendant DeKoter, and defendants Weber, Scott Gries, Nate Krikke, Hansen, Osceola County (collectively, "the County defendants") each filed motions to dismiss portions of the Second Amended Complaint.  In response, plaintiffs sought and were granted leave to file their Third Amended Complaint on January 3, 2013.  The Third Amended Complaint contained more factual detail and added the Law Firm as named defendants (DeKoter and the Law Firm will collectively be referred to as "the Law Firm defendants" unless otherwise indicated).  In general terms, the Third Amended Complaint again alleges that Hansen and Weber abused the power of their official positions by acting in concert with the other defendants to benefit them, their friends and clients.  Plaintiffs added claims under Iowa's Ongoing Criminal Conduct statute ("OCC"), *see* IOWA CODE ch. 706A, to their RICO claims in Count 2.

Defendants were permitted to submit supplemental briefs addressing the allegations contained in the Third Amended Complaint and how, if at all, those allegations impacted defendants' original arguments.

On July 17, 2013, I granted in part and denied in part the defendants' motions to dismiss.  I dismissed the City of Sibley as a defendant.  As for the other defendants, I dismissed some claims while finding that others were sufficiently plead.  The dismissed

claims included: (1) the RICO and OCC claims; (2) a First Amendment right to petition claim; (3) Carol Van Stelton's defamation claims; (4) the ongoing criminal conduct claim under Iowa state law; and (5) the tortious interference with prospective business relations claim. Plaintiffs' remaining claims are: (1) violations of constitutional rights, brought pursuant to 42 U.S.C. § 1983; (2) false arrest; (3) malicious prosecution; (4) slander and libel, (5) breach of fiduciary duty, and (6) tortious interference with prospective business advantage.

The County defendants, the Law Firm defendants, and the Van Stelton defendants all seek summary judgment on the claims asserted against them for a variety of reasons, pursuant to Federal Rule of Civil Procedure 56. Plaintiffs filed timely responses to defendants' motions for summary judgment in which they resist some, but not all, of defendants' motions for summary judgment.

## II. LEGAL ANALSYIS

After reviewing the standards for summary judgment motions, I will address the specific issues raised by defendants' motions. Because of an overlap in the issues raised by defendants' motions, I will address the issues *seriatim*.

### A. Summary Judgment Standards

Motions for summary judgment essentially "define disputed facts and issues and . . . dispose of unmeritorious claims [or defenses]." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 585 (2007) (internal quotation marks and citation omitted); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses. . . ."). Summary judgment is only appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits,

if any, show that there is no *genuine* issue of *material* fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c) (emphasis added); *see Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) ("Summary judgment is appropriate if viewing the record in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.").

A fact is *material* when it "'might affect the outcome of the suit under the governing law.'" *Johnson v. Crooks*, 326 F.3d 995, 1005 (8th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Thus, "the substantive law will identify which facts are material." *Anderson*, 477 U.S. at 248. An issue of material fact is *genuine* if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question," *Woods*, 409 F.3d at 990 (quoting *Anderson*, 477 U.S. at 248); *see Diesel Machinery, Inc. v. B.R. Lee Indus., Inc.*, 418 F.3d 820, 832 (8th Cir. 2005) (stating genuineness depends on "whether a reasonable jury could return a verdict for the non-moving party based on the evidence").

Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue," *Hartnagel,* 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323), and demonstrating that it is entitled to judgment according to law. *See Celotex*, 477 U.S. at 323 ("[T]he motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied."). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, designate

"specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Mosley v. City of Northwoods, Mo.*, 415 F.3d 908, 910 (8th Cir. 2005) ("The nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.'" (quoting *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995))).

As the Eighth Circuit Court of Appeals has explained,

> "On a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts.'" *Ricci v. DeStefano*, ---U.S. ----, 129 S. Ct. 2658, 2677, 174 L. Ed. 2d 490 (2009) *quoting Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) (internal quotations omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000), *quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts," and must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" *Ricci*, 129 S. Ct. at 2677, *quoting Matsushita*, 475 U.S. at 587, 106 S. Ct. 1348.

*Torgerson v. City of Rochester*, 643 F.3d 1031, 1042-43 (8th Cir. 2011) (*en banc*).

Summary judgment is particularly appropriate when only questions of law are involved, rather than factual issues that may or may not be subject to genuine dispute. *See, e.g., Cremona v. R.S. Bacon Veneer Co.*, 433 F.3d 617, 620 (8th Cir. 2006).

Consequently, I turn to consider the parties' arguments for and against summary judgment.

## B.    Section 1983 Claims

The County defendants, the Law Firm defendants, and the Van Stelton defendants all seek summary judgment on plaintiffs' § 1983 claims.    After reviewing the requirements for such claims, I will address the specific issues raised by defendants' motions.

### 1.    Requirements for § 1983 claim

"Section 1983 provides a cause of action against any person who deprives an individual of federally guaranteed rights 'under color' of state law." *Filarsky v. Delia*, 132 S. Ct. 1657, 1661 (2012) (quoting 42 U.S.C. § 1983).  In order to state a claim for relief under 42 U.S.C. § 1983, plaintiffs must establish that they were "deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999); *accord Alexander v. Hedback*, 718 F.3d 762, 765 (8th Cir. 2013) ("To state a claim under 42 U.S.C. § 1983, a plaintiff must show that he was deprived of a right secured by the Constitution and the laws of the United States and that the deprivation was committed by a person acting under color of state law.").  Thus, "[t]he essential elements of a constitutional claim under § 1983 are (1) that the defendant acted under color of state law, and (2) that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right." *L.L. Nelson Enters., Inc. v. County of St. Louis, Mo.*, 673 F.3d 799, 805 (8th Cir. 2012); *see Van Zee v. Hanson*, 630 F.3d 1126, 1128 (8th Cir. 2011); *Zutu v. Nelson*, 601 F.3d 842, 848 (8th Cir. 2010 (quoting *Schmidt v. City of Bella Villa*, 557 F.3d 564, 571 (8th Cir. 2009)); *Dennen v. City of*

*Duluth*, 350 F.3d 786, 790 (8th Cir. 2003); *Murray v. City of Onawa*, 323 F.3d 616, 618 (8th Cir. 2003); *DuBose v. Kelly*, 187 F.3d 999, 1002 (8th Cir. 1999).

Courts have consistently treated the "under color of state law" element of § 1983 "as the same thing as the 'state action' required under the Fourteenth Amendment." *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982) (quoting *United States v. Price*, 383 U.S. 787, 794 (1966)); *accord Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 n.2 (2001); *Sullivan*, 526 U.S. at 50 (1999); *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 935 (1982); *Dossett v. First State Bank*, 399 F.3d 940, 947 (8th Cir. 2005); *Tancredi v. Metropolitan Life Ins. Co.*, 378 F.3d 220, 229 (2nd Cir. 2004); *Lee v. Katz*, 276 F.3d 550, 554 (9th Cir. 2002); *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001); *Tarpley v. Keistler*, 188 F.3d 788, 791 (7th Cir. 1999); *Abraham v. Raso*, 183 F.3d 279, 287 (3rd Cir. 1999); *Yeo v. Town of Lexington*, 131 F.3d 241, 248 n.3 (1st Cir. 1997); *Doe v. Rains County Indep. Sch. Dist.*, 66 F.3d 1402, 1406 (5th Cir. 1995). "[S]tate action requires both an alleged constitutional deprivation 'caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible,' and that 'the party charged with the deprivation must be a person who may fairly said to be a state actor.'" *Sullivan*, 526 U.S. at 50 (quoting *Lugar*, 457 U.S. at 937). Careful attention to the state action requirement serves two purposes: it "preserves an area of individual freedom by limiting the reach of federal law and federal judicial power," *Lugar*, 457 U.S. at 936; and it avoids imposing on a state responsibility for conduct which was not under its control. *Brentwood Acad.*, 531 U.S. at 295.

The Eighth Circuit Court of Appeals has observed that:

> The Supreme Court has recognized a number of circumstances in which a private party may be characterized as a state actor, such as where the state has delegated to a private party a power "traditionally exclusively reserved to

> the State," *see Jackson v. Metro. Edison Co.*, 419 U.S. 345,
> 352, 95 S. Ct. 449, 42 L. Ed. 2d 477 (1974), where a private
> actor is a "willful participant in joint activity with the State or
> its agents," *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144,
> 151, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970), and where
> there is "pervasive entwinement" between the private entity
> and the state*, see Brentwood*, 531 U.S. at 291, 121 S. Ct.
> 924. These particular circumstances are merely examples and
> not intended to be exclusive. *See id.* at 295, 121 S. Ct. 924.

*Wickersham v. City of Columbia*, 481 F.3d 591, 597 (8th Cir. 2007).  The court went on to point out that:

> The one unyielding requirement is that there be a "close
> nexus" not merely between the state and the private party, but
> between the state and the alleged deprivation itself. *See
> Brentwood*, 531 U.S. at 295, 121 S. Ct. 924. No such nexus
> exists where a private party acts with the mere approval or
> acquiescence of the state, *see Blum v. Yaretsky*, 457 U.S. 991,
> 1004-05, 102 S. Ct. 2777, 73 L.Ed.2d 534 (1982), but a
> private entity may be considered a state actor if it "has acted
> together with or has obtained significant aid from state
> officials" in furtherance of the challenged action. *Lugar*, 457
> U.S. at 937, 102 S. Ct. 2744.

*Wickersham*, 481 F.3d at 597.

## 2.    Under color of state law requirement

The Law Firm defendants and the Van Stelton defendants both contend that plaintiffs cannot satisfy § 1983's under color of state law requirement.  Plaintiffs do not specifically address this argument in their brief.  Rather, plaintiffs generally argue that they have generated genuine issues of material fact on their § 1983 claims based on the Law Firm defendants, the Van Stelton defendants, and the County defendants being "complicit compatriots" in the Van Stelton defendants' alleged scheme to defraud plaintiffs of certain family farmlands.  The flaw in plaintiffs' argument is that plaintiffs have not demonstrated a sufficiently close nexus between Sheriff Weber and/or County

Attorney Hansen and the Law Firm defendants or the Van Stelton defendants that would permit a reasonable fact finder to conclude that any of the Law Firm defendants or the Van Stelton defendants were acting under color of state law. The Law Firm defendants' mere representation of state actors does not constitute action under color of state law for the purposes of a § 1983 violation. *See Bilal v. Kaplan*, 904 F.2d 14, 15 (8th Cir. 1990); *Harkins v. Eldredge*, 505 F.2d 802, 803 (8th Cir.1974); *see also Eling v. Jones*, 797 F.2d 697, 699 (8th Cir. 1986). Thus, the fact that DeKoter wrote a preliminary draft of a gun permit policy for the Osceola County Sheriff's Department and provided private personal legal advice to Weber does not make him a state actor for the purposes of § 1983. Moreover, although plaintiffs allege that DeKoter controls and directs a symbiotic relationship with Hansen and Weber in which DeKoter directs Hansen and Weber to selectively enforce criminal laws and ordinances to benefit the Law Firm's clients, plaintiffs have not directed me to anything in the summary judgment record which, considered in the light most favorable to plaintiffs, would permit a reasonable fact finder to conclude that the Law Firm defendants have such a symbiotic relationship with Hansen and/or Weber. Indeed, there is no admissible evidence in the summary judgment record that DeKoter directed any person to do anything to plaintiffs. Virgil and Alvin's declarations, based on their "knowledge, information and belief," are insufficient to generate a genuine issue of material fact. For summary judgment purposes, "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." FED. R. CIV. P. 56(c)(4). "Rule 56[c]'s personal knowledge requirement prevents statements in affidavits that are based, in part, 'upon information and belief'—instead of only knowledge—from raising genuine issues of fact sufficient to defeat summary judgment." *Pace v. Capobianco*, 283 F.3d 1275, 1278 (11th Cir. 2002); *see Automatic Radio Mfg. Co. v. Hazeltine Research,*

*Inc.*, 339 U.S. 827, 831 (1950) (facts alleged on "information and belief" are not sufficient to create a genuine issue of fact); *Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361, 1367 (8th Cir. 1983) ("Under Rule 56[c], an affidavit filed in support of or in opposition to a summary judgment motion must be based upon the personal knowledge of the affiant; information and belief is insufficient" to create an issue of material fact); *see also SCR Joint Venture L.P. v. Warshowsky*, 559 F.3d 133, 138 (2d Cir. 2009) ("The Rule's requirement that affidavits be made on personal knowledge is not satisfied by assertions made 'on information and belief.'") (quoting *Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 219 (2d Cir. 2004)); *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 851 (11th Cir.2000) ("upon information and belief" insufficient); *Causey v. Balog*, 162 F.3d 795, 803 n.4 (4th Cir. 1998) (" Rule 56[c] precludes consideration of materials not based on the affiant's first hand knowledge."); *Price v. Rochford*, 947 F.2d 829, 832 (7th Cir. 1991) (verification based on personal knowledge or information and belief is insufficient to oppose a motion for summary judgment because it avoids the possibility of perjury); *Fowler v. Southern Bell Tel. and Tel. Co.*, 343 F.2d 150, 154 (5th Cir. 1965) ("knowledge, information and belief" insufficient).

Likewise, plaintiffs have not generated a genuine issue of material fact that any of the Van Stelton defendants' actions were taken under color of state law.  Other than the self-serving declarations of Virgil and Alvin, which I cannot consider because they are not based on personal knowledge, there are no materials in the summary judgment record which, considered in the light most favorable to plaintiffs, would permit a reasonable fact finder to conclude that any of the Van Stelton defendants were willful participants in a conspiracy or other joint activity with any of the County defendants.

Accordingly, the Law Firm defendants and the Van Stelton defendants' motions for summary judgment are granted with respect to plaintiffs' § 1983 claims against them.[7]

### 3. Section 1983 claims against the County defendants

Plaintiffs allege that the County defendants have deprived them of their civil rights under the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. I will consider each of these claims in turn.

### a. First Amendment claims

It is unclear from plaintiffs' allegations in their Third Amended Complaint whether plaintiffs claim they were prevented from exercising their First Amendment rights.

---

[7] Plaintiffs do not mention 42 U.S.C. § 1983 in Count VI of the Third Amended Complaint. The law is clear that a claim against state actors for violation of constitutional rights is not enforceable directly under the Constitution, but rather through § 1983 or other civil rights statutes. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001) (noting that "a litigant complaining of a violation of a constitutional right does not have a direct cause of action under the United States Constitution but must utilize 42 U.S.C. § 1983."); *Martin v. City of Los Angeles*, 141 F.3d 1373, 1383 (9th Cir. 1998) (observing that "a plaintiff may not sue a state defendant directly under the Constitution where § 1983 provides a remedy."); *Azul–Pacifico, Inc. v. City of Los Angeles*, 973 F.2d 704, 705 (9th Cir. 1992) ("Plaintiff has no cause of action directly under the United States Constitution. We have previously held that a litigant complaining of a violation of a constitutional right must utilize 42 U.S.C. § 1983."); *Hunt v. Robeson Cnty. Dep't of Soc. Servs.*, 816 F.2d 150, 152 n.2 (4th Cir. 1987) ("Because defendants here are all local officials, any cause of action against them for unconstitutional conduct under color of state law could only proceed under § 1983."); *see also Quality Refrigerated Servs., Inc. v. City of Spencer*, 908 F. Supp. 1471, 1492 (N.D. Iowa 1995) ("There simply is no direct cause of action arising under the Constitution itself against municipal officials for alleged constitutional violations. Rather courts have held that a litigant complaining of a violation of a constitutional right must utilize 42 U.S.C. § 1983.") (citation omitted). Construing plaintiffs' pleadings liberally, and as no other civil rights statute appears to present a viable vehicle for asserting plaintiffs' First Amendment right to access claim, I construe this claim as arising under § 1983.

Plaintiffs have not clarified this question in their brief, which does not specifically address their First Amendment claims. Plaintiffs ostensibly make two claims. First, that Virgil was not permitted to tell his side of the story before his arrest; and second, that the County defendants interfered with plaintiffs' right to associate with their stepmother, Margaret.

### i.    *Virgil's arrest*

Virgil asserts that his First Amendment rights were violated because he was not permitted to state his side of the incident with Jerry before his arrest in 2009. His claim fails because the uncontested summary judgment record reveals that Virgil was interviewed before his arrest. Indeed, Virgil admitted to Deputy Krikke that "he took Jerry down." Krikke Dep. at 39, The County defendants' App. at 58. Virgil's statement caused Krikke to conclude that Virgil was involved in fighting and assaulting Jerry. Accordingly, there is no factual basis for Virgil's claim that he was denied his First Amendment rights in conjunction with his arrest, and the County defendants' motion for summary judgment is granted with respect to Virgil's claim.

### ii.    *Family association*

Plaintiffs also contend that the County defendants violated their First Amendment rights by interfering with their ability to see their stepmother, Margaret. The County defendants contend that plaintiffs' claims fail both factually and legally.

The Supreme Court has recognized two kinds of constitutionally-protected association: intimate association and expressive association. *See Roberts v. United States Jaycees*, 468 U.S. 609, 617–18 (1984). Intimate association protects the right "to enter into and maintain certain intimate human relationships." *Id.*; *see Pickup v. Brown*, 740 F.3d 1208, 1233 (9th Cir. 2014); *Good Paster v. City of Indianapolis*, 736 F.3d 1060, 1073 (7th Cir. 2013); *Kolley v. Adult Protective Servs.*, 725 F.3d 581, 587 (6th Cir.

2013); *Montgomery v. Stefaniak*, 410 F.3d 933, 937 (7th Cir. 2005).[8]  This right, however, is not absolute.  *Wingate v. Gage Cnty. Sch. Dist., No. 34,* 528 F.3d 1074, 1081 (8th Cir. 2008); *Norbeck v. Davenport Cmty. Sch. Dist.*, 545 F.2d 63, 67 (8th Cir. 1976).  "'A defendant can be held liable for violating a right of intimate association only if the plaintiff shows an intent to interfere with the relationship.'"  *Reasonover v. St. Louis County, Mo.*, 447 F.3d 569, 585 (8th Cir. 2006) (quoting *Singleton v. Cecil*, 133 F.3d 631, 635 (8th Cir. 1998) (quoting in turn *Morfin v. Albuquerque Pub. Sch.*, 906 F.2d 1434, 1440 (10th Cir. 1990), cited with approval in *Singleton v. Cecil*, 176 F.3d 419, 423 (8th Cir. 1999) (en banc)).  Plaintiffs present no evidence that the County defendants had an intent to interfere with the relationship between them and Margaret.  At no time was Alvin or Carol ever prohibited by Sheriff Weber or any of the County defendants from communicating with Margaret.  Sheriff Weber and Deputy Gries's contact with Virgil was the direct result of two complaints about Virgil harassing Margaret.  After the first of these complaints, Sheriff Weber went to the nursing home and spoke to Margaret.  Margaret told Weber that Virgil "causes trouble."  Sheriff Weber contacted Virgil only after receiving a second complaint, from Van Sloten, the administrator of County View Manor, that Virgil was upsetting Margaret and that Margaret did not want Virgil there.  Sheriff Weber's actions were taken only as a response to Van Sloten's complaint that Virgil was upsetting Margaret and that, as a result, Virgil was not welcome at the nursing home.  These actions did not violate Virgil's First Amendment rights.  Accordingly, the County defendants' motion for summary

---

[8] "Expressive association, on the other hand, 'ensures the right to associate for the purpose of engaging in activities protected by the First Amendment.'"  *Goodpaster*, 736 F.3d at 1072 (quoting *Montgomery*, 410 F.3d at 937).  In order to qualify, as an expressive association, a group must "engage in some form of expression, whether it be public or private."  *Boy Scouts of America v. Dale*, 530 U.S. 640, 648 (2000); *see Goodpaster*, 736 F.3d at 1072.

25

judgment is granted with respect to plaintiffs' claim that the County defendants interfered with plaintiffs' right to associate with Margaret.

### b. Fourth Amendment claims

The Fourth Amendment guarantees that "[t]he right of the people to be secure in their persons . . . and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." U.S. CONST. amend. IV. The County defendants next seek summary judgment on plaintiffs' claim that the County defendants' violated their Fourth Amendment rights. Plaintiffs specifically allege that the County defendants violated Virgil's Fourth Amendment rights by the warrantless arrest of Virgil and the search of Virgil's tape recorder. The County defendants argue plaintiffs' Fourth Amendment claims fail because Deputies Krikke and Gries had probable cause to arrest Virgil for assault and trespassing. The County defendants further argue that they reasonably believed that Virgil had consented to them listening to the portion of the tape recording concerning the incident with Jerry. Plaintiffs' brief does not address the County defendants' arguments.

### i. Virgil's warrantless arrest

In *Kurtz v. City of Shrewsbury*, 245 F.3d 753 (8th Cir. 2001), the Eighth Circuit Court of Appeals observed that:

> [A] false arrest claim under § 1983 fails as a matter of law where the officer had probable cause to make the arrest. *See Anderson v. Franklin County*, 192 F.3d 1125, 1131 (8th Cir. 1999) (false arrest claim under § 1983 does not lie where officer had probable cause to make arrest). Since the record adequately supports the conclusion that the police officers had probable cause to arrest Kurtz for tampering [with a motor vehicle], plaintiffs' allegations of false arrest fail to establish a civil rights violation. *See* Mo. Rev. Stat. § 569.080 (person commits the crime of tampering when he or she wrongfully operates an automobile without the consent of the owner). It is undisputed that Kurtz lacked the owner's consent. Thus, the

> police officers had sufficient probable cause to arrest Kurtz,
> and plaintiffs have no claim for false arrest under § 1983.

*Kurtz*, 245 F.3d at 758; *see Ulrich v. Pope Cnty.*, 715 F.3d 1054, 1059 (8th Cir. 2013) ("'A warrantless arrest is consistent with the Fourth Amendment if it is supported by probable cause.'") (quoting *Borgman v. Kedley*, 646 F.3d 518, 522 (8th Cir. 2011) (quoting in turn *Walker v. City of Pine Bluff*, 414 F.3d 989, 992 (8th Cir.2005) (internal quotation marks omitted)); *Royster v. Nichols*, 698 F.3d 681, 687-88 (8th Cir. 2012) (same); *Fischer v. Wal-Mart Stores, Inc.*, 619 F.3d 811, 816 (8th Cir. 2010) (same). Thus, the *Kurtz* decision plainly requires that, when a "constitutional" false arrest claim is asserted against an arresting officer, the key question is whether there was "probable cause" for the arrest of the plaintiff, which is measured by examining the law that the plaintiff purportedly violated. Moreover, the "probable cause" requirement in *Kurtz* is what gives constitutional proportions to what otherwise might be only a state-law tort, for it is the presence or absence of "probable cause" that determines whether the plaintiff's constitutional rights have been violated. *See, e.g., Quezada v. County of Bernalillo*, 944 F.2d 710, 714 (10th Cir. 1991) (the fact that a police officer may have committed a tort is not enough for liability under § 1983; rather, the question is whether the tortious conduct violated any of the plaintiff's constitutional rights).

"Probable cause to make a warrantless arrest exists 'when the totality of the circumstances at the time of the arrest are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense.'" *Ulrich*, 715 F.3d at 1059 (quoting *Borgman*, 646 F.3d at 522) (quoting in turn *Fischer*, 619 F.3d at 816). Generally, a law enforcement officer is "'entitled to rely on the veracity of information supplied by the victim of a crime.'" *Royster*, 698 F.3d at 688 (quoting *Fischer v. Wal-Mart Stores, Inc.*, 619 F.3d at 817) (internal quotation marks and citation omitted). "In considering information given by a victim of a crime, an officer need not conduct a 'mini-

trial' before effectuating an arrest although he cannot avoid 'minimal further investigation' if it would have exonerated the suspect." *Borgman*, 646 F.3d at 523 (quoting *Kuehl v. Burtis*, 173 F.3d 646, 650 (8th Cir. 1999) (holding that no probable cause existed where officer only spoke with suspect for 20 seconds, ignored exculpatory evidence, and disregarded eyewitness account)). Ultimately, "'Fourth Amendment analysis . . . turns on what a reasonable officer could have believed under the circumstances, not on the state of mind or subjective beliefs of the[ ] particular officer [ ].'" *Royster*, 698 F.3d at 688 (quoting *McKenney v. Harrison*, 635 F.3d 354, 359 (8th Cir. 2011)).

"'Viewing the record and drawing all reasonable inferences in the light most favorable to [plaintiffs], while simultaneously viewing the facts from the perspective of a reasonable officer on the scene," *Royster*, 698 F.3d at 688 (quoting *Montoya v. City of Flandreau*, 669 F.3d 867, 871 (8th Cir. 2012), I conclude that Deputies Krikke and Gries had probable cause to arrest Virgil for assault and trespassing. Virgil told Deputy Krikke that he took Jerry down and Deputy Krikke observed red marks on Jerry's neck. The Iowa Code states that:

> 2.  A person commits an assault when, without justification, the person does any of the following:
>
> > a.  Any act which is intended to cause pain or injury to, or which is intended to result in physical contact which will be insulting or offensive to another, coupled with the apparent ability to execute the act.
> >
> > b.  Any act which is intended to place another in fear of immediate physical contact which will be painful, injurious, insulting, or offensive, coupled with the apparent ability to execute the act.

IOWA CODE § 7081.(2)(a)-(b).  Thus, based on Virgil's statement and the observed red marks on Jerry's neck, Deputy Krikke could have reasonably concluded that Virgil had assaulted Jerry.

Under Iowa law, a person commits criminal trespass by:

> (1) Entering upon or in property without the express permission of the owner, lessee, or person in lawful possession with the intent to commit a public offense . . . .,
>
> (2) Entering or remaining upon or in property without justification after being notified or requested to abstain from entering or to remove or vacate therefrom by the owner, lessee, or person in lawful possession, or the agent or employee of the owner, lessee, or person in lawful possession, or by any peace officer, magistrate, or public employee whose duty it is to supervise the use or maintenance of the property.

IOWA CODE § 716.7(2)(a)(1)-(2).  Virgil does not claim that Jerry gave him permission to be on his land.  Virgil admitted to Krikke that he took Jerry down.  Moreover, there is no dispute that this occurred on Jerry's land after Jerry had told Virgil to stay in the field driveway and not to come onto his land.  Given these facts, the deputies could have reasonably concluded that Virgil had committed a trespass on Jerry's land by entering either with the intent to commit a pubic offense or by remaining on Jerry's land without justification.  Thus, because the deputies had probable cause to arrest Virgil, they did not violate the Fourth Amendment and the County defendants' motion for summary is granted as to plaintiffs' Fourth Amendment claim based on Virgil's arrest.

### ii.    Search of tape recorder

The County defendants contend that they reasonably believed that Virgil had consented to them listening to the portion of the tape recording concerning the incident with Jerry.  Plaintiffs have not addressed this argument in their brief.  It is black letter law that "one of the specifically established exceptions to the requirements of both a

warrant and probable cause is a search that is conducted pursuant to consent." *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973); *see True v. Nebraska*, 612 F.3d 676, 680 (8th Cir. 2010) ("A valid consent to a search waives all Fourth Amendment claims."). "'Whether consent was given is a determination to be made from the totality of the circumstances.'" *True*, 612 F.3d at 679 (quoting *United States v. Oyekan*, 786 F.2d 832, 838 (8th Cir. 1986)). However, whether or not Virgil actually consented to a search of his tape recorder, "'the Fourth Amendment requires only that the police reasonably believe the search to be consensual.'" *United States v. Pena-Ponce*, 588 F.3d 579, 584 (8th Cir. 2009) (quoting *United States v. Barragan*, 379 F.3d 524, 530 (8th Cir. 2004)). "'The focus is not whether [Virgil] subjectively consented, but rather, whether a reasonable officer would believe consent was given and can be inferred from words, gestures, or other conduct.'" *Pena-Ponce*, 588 F.3d at 584 (quoting *United States v. Guerrero*, 374 F.3d 584, 596 (8th Cir. 2004)).

Here, Virgil asked the deputies if they had found his tape recorder. When told that they had, Virgil responded by telling them that there should be some pretty good evidence on it. Then, when Virgil was asked if he wanted to give a written statement, Virgil replied: "you have my tape recorder, don't you?" Krikke Dep. at 93; County Defendants' App. at 77. The County defendants contend that it was reasonable for Deputy Krikke to view Virgil's statements as consent for him to listen to that portion of the tape that concerned the incident with Jerry. Plaintiffs have not contested this argument in their brief nor offered any reason why it would be unreasonable for Krikke to view Virgil's actions as consent. Although I view it as a close question, I find that Krikke reasonably believed his search of Virgil's tape recording was consensual. Virgil answering Krikke's question about whether Virgil wanted to give a written statement, with the non sequitur response, "you have my tape recorder, don't you?", could reasonably be viewed as an invitation to Krikke to listen to the tape recording in lieu of

Virgil providing a written statement. Accordingly, the County defendants' motion for summary judgment is granted as to plaintiffs' Fourth Amendment claim based on the search of Virgil's tape recorder.[9]

---

[9]Even if I were to conclude that Deputy Krikke violated Virgil's Fourth Amendment rights, he would be entitled to qualified immunity on this claim. The Eighth Circuit Court of Appeals recently observed:

> Qualified immunity shields government officials from civil liability insofar as their conduct in performing discretionary functions "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed.2d 396 (1982). Qualified immunity provides "ample room for mistaken judgments," *Malley v. Briggs*, 475 U.S. 335, 343, 106 S. Ct. 1092, 89 L. Ed.2d 271 (1986), and protects "all but the plainly incompetent or those who knowingly violate the law," *id.* at 341, 106 S. Ct. 1092. "To overcome the defense of qualified immunity the plaintiff must show: '(1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation.'" *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010) (quoting *Howard v. Kansas City Police Dep't*, 570 F.3d 984, 988 (8th Cir. 2009)).

*Meehan v, Thompson*, --- F.3d ---, 2014 WL 3953992, at *3 (8th Cir. Aug. 14, 2014). Krikke is entitled to qualified immunity if the right he violated was not "clearly established" at the time of his actions. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted**."** *Id.* at 202. No prior case in the United States Supreme Court or the Eighth Circuit Court of Appeals has held that it would be unreasonable for a law enforcement officer to view a statement like Virgil's as consent. Accordingly, Krikke's actions were "objectively legally reasonable in light of the legal rules that were clearly established at the time it was taken," *Anderson v. Creighton*, 483 U.S. 635, 639 (1987), and he is entitled to qualified immunity.

### c. *Fifth Amendment claims*

The County defendants also seek summary judgment on plaintiffs' claim that the County defendants' violated their Fifth Amendment due process rights. Plaintiffs' claims fail as a matter of law because the Fifth Amendment's Due Process Clause applies only to the federal government or federal actions, and plaintiffs have not alleged that the federal government or a federal action deprived them of due process. *See Dusenbery v. United States*, 534 U.S. 161, 167 (2002) ("The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without 'due process of law.'"); *Baribeau v/ City of Minneapolis*, 596 F.3d 465, 484 (8th Cir. 2010) ("The Due Process Clause of the Fifth Amendment, however, applies only to the federal government."); *Barnes v. City of Omaha*, 574 F.3d 1003, 1005 n.2 (8th Cir. 2009) (same); *Junior Chamber of Commerce of Kansas City, Mo. v. Mo. State Junior Chamber of Commerce*, 508 F.2d 1031, 1033 (8th Cir.1975) (recognizing that a "federal action" is necessary "before there is any deprivation of due process in violation of the fifth amendment"). Accordingly, the County defendants' motion for summary judgment is granted as to plaintiffs' Fifth Amendment due process claims.

### d. *Fourteenth Amendment claims*

The County defendants also seek summary judgment on plaintiffs' claims that the County defendants' violated their due process rights under the Fourteenth Amendment. The County defendants contend that plaintiffs have failed to generate a genuine issue of material fact as to any action by them in violation of plaintiffs' rights that would support a substantive due process claim. Again, plaintiffs have not addressed these arguments in their brief.

The Due Process Clause of the Fourteenth Amendment was intended to prevent government "from abusing [its] power or employing it as an instrument of oppression."

*DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 196 (1989) (quoting *Davidson v. Cannon*, 474 U.S. 344, 348 (1986)). In its substantive form, the Due Process Clause protects individuals from arbitrary or oppressive behavior by government officials. *Daniels v. Williams*, 474 U.S. 327, 331 (1986). The Eighth Circuit Court of Appeals has instructed that: "[A] substantive due process plaintiff 'must demonstrate both that the official's conduct was conscience-shocking, and that the official violated one or more fundamental rights that are "deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed."'" *Slusarchuk v. Hoff*, 346 F.3d 1178, 1181-82 (8th Cir. 2003) (quoting *Moran v. Clarke*, 296 F.3d 638, 651 (8th Cir. 2002) (en banc) (citations omitted)).

In their Third Amended Complaint, plaintiffs allege that DeKoter orchestrated Virgil's false arrest with County Attorney Hansen as a pretext to seize Virgil's tape recorder. Thus, plaintiffs allege a concerted plan between DeKoter and the County defendants to violate Virgil's due process rights. Plaintiffs, however, have failed to generate a genuine issue of material fact on any of these claims. There is no material in the summary judgment record which would permit a reasonable fact finder to conclude that DeKoter had any involvement in Virgil's arrest. Rather, the uncontroverted facts in the summary judgment record are that DeKoter did not know about Virgil's arrest until after it occurred. The Supreme Court formulated the "shocks the conscience" test in *Rochin v. California*, 342 U.S. 165 (1952), where it found that the forced pumping of a suspect's stomach to obtain evidence so offended due process that it "shock[ed] the conscience." *Id*. at 172-173. Here, in contrast, I conclude that the conduct of the County defendants does not shock the conscience as to violate substantive due process. Therefore, this portion of the County defendants' motion for summary judgment is granted.

### e.    Constitutional claims against Osceola County

The Eighth Circuit Court of Appeals has succinctly described the requirements for "*Monell* liability" of a municipality, as follows:

> Although the Supreme Court has "held that a municipality is a 'person' that can be liable under § 1983," it is well established "that a municipality cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor." *Szabla v. City of Brooklyn Park, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007) (citing *Monell [v. Department of Social Servs. of New York]*, 436 U.S. [658,] 690–91, 98 S. Ct. 2018 [(1978)]). Section 1983 liability for a constitutional violation may attach to a municipality if the violation resulted from (1) an "official municipal policy," *Monell*, 436 U.S. at 691, 98 S. Ct. 2018; (2) an unofficial "custom," *id*. at 690–91, 98 S. Ct. 2018; or (3) a deliberately indifferent failure to train or supervise, *see City of Canton, Ohio v. Harris*, 489 U.S. 378, 388, 109 S. Ct. 1197, 103 L. Ed.2d 412 (1989).

*Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013). Thus, to prevail on their § 1983 claims against Osceola County, plaintiffs must establish an underlying violation of their constitutional rights. *See Olinger v. Larson*, 134 F.3d 1362, 1367 (8th Cir. 1998). As discussed above, plaintiffs fail to establish any genuine issue of material fact about whether such a violation occurred. Therefore, Osceola County is entitled to summary judgment on plaintiffs' § 1983 claims against it and this portion of the County defendants' motion for summary judgment is also granted.

### C.    State Law Claims

The County defendants, the Law Firm defendants, and the Van Stelton defendants all seek summary judgment on plaintiffs' remaining state law claims against them. After reviewing the requirements for each claim, I will address the specific issues raised by defendants' motions as to that claim.

### 1.    False arrest

#### a.    Requirements for false arrest claim

Under Iowa law, false arrest is indistinguishable from false imprisonment. *See Rife v. D.T. Corner, Inc.*, 641 N.W.2d 761, 767 (Iowa 2002); *Kraft v. Bettendorf*, 359 N.W.2d 466, 469 (Iowa 1984). A claim of false arrest has two elements: "'(1) detention or restraint against one's will, and (2) unlawfulness of the detention or restraint.'" *Thomas v. Marion Cnty.*, 652 N.W.2d 183, 186 (Iowa 2002) (quoting *Kraft*, 359 N.W.2d at 469); *see Children v. Burton*, 331 N.W.2d 673, 678-79 (Iowa 1983). "'[A] private citizen at whose request, direction, or command a police officer makes an arrest without a warrant is liable if the arrest turns out to be unlawful.'" *Busch v. City of Anthon, Iowa*, 173 F. Supp.2d 876, 894 (N.D. Iowa 2001) (quoting (quoting *Dixon v. Hy-Vee, Inc.*, No. 00–1234, 2001 WL 912738, at *2 (Iowa Ct. App. Aug. 15, 2001)) (quoting in turn 32 AM.JUR.2d *False Imprisonment* § 40 (1995)). A person who instigates or participates in the unlawful arrest of another person is subject to liability to that person for false imprisonment. *Id*. Iowa courts distinguish between "merely reporting an incident or suspect, and instigating detention by authorities." *Turk v. Iowa West Racing Ass'n, Inc.*, 690 N.W.2d 695, 2004 WL 1836119, at *4 (Iowa Ct. App. Aug. 11, 2004) (unpublished table decision). Instigation goes beyond a person giving information to the police about a crime's commission or accusing another of committing a crime so long as the person "leaves to the police the decision as to what shall be done about any arrest, without persuading or influencing them." *Busch*, 173 F. Supp. 2d at 895 (citing RESTATEMENT (SECOND) OF TORTS § 45A cmt. c (1965)). A person may be liable for false arrest or false imprisonment if the person supplied information to the police that he or she knew to be false. *Id*.

### b.    *The County defendants*

The County defendants argue that plaintiffs' false arrest claims against them fail because deputies Krikke and Gries had probable cause to arrest Virgil. I agree. "'In determining probable cause, all the information in the officer's possession, fair inferences therefrom, and observations made by him, are generally pertinent; and facts may be taken into consideration that would not be admissible on the issue of guilt.'" *Children v. Burton*, 331 N.W.2d 673, 680 (Iowa 1983) (quoting 5 AM. JUR.2d *Arrest* § 48, at 740–41 (1962)). "A false arrest case involving the issue of probable cause turns on what the officer knew at the time of arrest, not what he learned later." *Id.* at 678. "Facts that occur or come to light subsequent to the arrest are irrelevant to a determination of whether probable cause existed at the time of arrest." *Id.* at 680. For the reasons discussed above, I find that Krikke and Gries had probable cause to arrest Virgil for assault and trespass. Thus, plaintiffs' false arrest claims against the County defendants fail as a matter of law and this portion of the County defendants' motion for summary judgment is also granted.

### c.    *The Law Firm defendants*

Plaintiffs' false arrest claim against DeKoter is based on their allegation that DeKoter orchestrated Virgil's arrest. The Law Firm defendants contend that plaintiffs have failed to generate a genuine issue of material fact that DeKoter instigated or participated in Virgil's arrest. The summary judgment record is devoid of any material which would permit a reasonable fact finder to conclude that DeKoter had any involvement whatsoever in Virgil's arrest. Moreover, as discussed above, Krikke and Gries had probable cause to arrest Virgil for assault and trespass. Therefore, because DeKoter did not instigate or participate in Virgil's arrest, and, because Virgil's arrest was lawful, this portion of the Law Firm defendants' motion for summary judgment is also granted.

### d. *Van Stelton defendants*

The Van Stelton defendants also seek summary judgment on plaintiffs' false arrest claims against them. They contend that both Carol and Eugene had no involvement in Virgil's arrest and that Jerry did not persuade or influence Deputies Krikke and Gries into arresting Virgil. The summary judgment record supports the Van Stelton defendants' arguments. The summary judgment record is devoid of any material which would permit a reasonable fact finder to conclude that either Carol or Eugene had any involvement whatsoever in Virgil's arrest. Neither was present at the scene or was in contact with Deputies Krikke and Gries before they arrested Virgil.

In *Dixon v. Hy–Vee, Inc.*, No. 00-1234, 2001 WL 912738 (Iowa Ct. App. Aug.15, 2001), the Iowa Court of Appeals explained that:

> "There is no liability for merely giving information to legal authorities, who are left entirely free to use their own judgment, or for identifying the plaintiff as the person wanted." W. Page Keeton et al., Prosser & Keeton on the Law of Torts § 11 at 52 (5th Ed. 1984). *See also Lewis v. Farmer Jack Division, Inc.*, 415 Mich. 212, 327 N.W.2d 893, 894 (1982) (holding supermarket was not liable for false arrest of plaintiff despite store employee's misidentification of plaintiff as robber and subsequent dismissal of robbery charge against plaintiff—arrest was not a "false arrest" because probable cause to arrest existed); *Smits v. Wal–Mart Stores, Inc.*, 525 N.W.2d 554, 558 (Minn. Ct. App. 1994) ("A party is not liable for false imprisonment for conveying information about suspected criminal activity unless that party directly persuades or commands the police to detain the suspect."); *Dangberg v. Sears, Roebuck and Co.*, 198 Neb. 234, 252 N.W.2d 168, 171 (1977) (stating that one who merely tells an officer what he knows of a supposed offense or gives information to an officer tending to show that a crime has been committed, without requesting an arrest, is not liable for false arrest and imprisonment); *Wishnatsky v. Bergquist*, 550 N.W.2d 394, 399 (N.D. 1996) (holding there is no liability

where a private citizen merely summons the police for assistance and does not specifically request the person be arrested or supply false information, or merely provides information to police and leaves the decision of whether to arrest to the officer's judgment and discretion) [, *cert. denied*, 519 U.S. 895, 117 S. Ct. 240, 136 L.Ed.2d 169 (1996)]; Landis, Annotation, False Imprisonment: Liability of Private Citizen, Calling on Police for Assistance after Disturbance or Trespass, for False Arrest by Officer, 98 A.L.R.3d 542 §§ 2 and 4, 1980 WL 130926 (1980) (citing cases where federal and state courts have held private citizen is not liable for false arrest or false imprisonment when he or she did not specifically request the officer arrest the alleged offender or supply false information to the police). Supplying false information means supplying information the supplier knows is false, and does not mean the mere good faith supplying of mistaken information. *See Powers v. Carvalho*, 117 R.I. 519, 368 A.2d 1242, 1248 (1977) and cases cited therein. Dixon did not argue in resisting directed verdict and does not argue on appeal that Hy–Vee supplied information to the police that it knew to be false, and there is no substantial evidence it did so.

As stated above, the trial court found, as a matter of law, that Hy–Vee could not be held liable for false arrest or false imprisonment under the facts of this case. The court determined there was no proof Hy–Vee detained or restrained Dixon in any way and there was no evidence that Hy–Vee demanded or requested Dixon's detention or arrest. We agree with the conclusions of the trial court.

*Dixon*, No. 00-1234, 2001 WL 912738, at *2–3. Thus, for a false arrest claim to lie against a person who reported a crime, Iowa law requires not only that the arrest be shown to be "unlawful," but that the person who reported the crime "instigated" the arrest, not simply reported it. Here, after the altercation between Virgil and Jerry, Jerry merely contacted the Osceola County Sheriff's Department and reported the incident. He did not instigate Virgil's arrest. Instead, after their investigation at the scene, based on

Virgil's admission to Deputy Krikke that he took Jerry down and Deputy Krikke's observation of red marks on Jerry's neck, the deputies concluded that they had probable cause to arrest Virgil for assault and trespass. Moreover, because the deputies' arrest was based on probable cause, it was lawful. Accordingly, plaintiffs' false arrest claim against Jerry fails as a matter of law, and this portion of the Van Stelton defendants' motion for summary judgment is also granted.

### 2. *Malicious prosecution*

### a. *Requirements for malicious prosecution claim*

In order to establish a claim of malicious prosecution, a plaintiff must prove the following six elements:

> (1) a previous prosecution; (2) instigation of that prosecution by the defendant; (3) termination of the prosecution by acquittal or discharge of the plaintiff; (4) want of probable cause; (5) malice on the part of the defendant for bringing the prosecution; and (6) damage to the plaintiff.

*Wilson v. Hayes*, 464 N.W.2d 250, 259 (Iowa 1990); *see Winkel v. Von Maur, Inc.*, 652 N.W.2d 453, 460 (Iowa 2002), abrogated *in part on other grounds by Barreca v. Nickolas*, 652 N.W.2d 453 (Iowa 2004); *Royce v. Henning*, 423 N.W.2d 198, 200 (Iowa 1998); *Sarvold v. Dodson*, 237 N.W.2d 447, 448 (Iowa 1976); *see also Craig v. City of Cedar Rapids*, 826 N.W.2d 516, 2012 WL 6193862, at *4 (Iowa Ct. App. Dec. 12, 2012) (unpublished table decision); *Jackson v. Wesselink*, 758 N.W.2d 349, 2011 WL 649471, at *4 (Iowa Ct. App. Feb. 23, 2011) (unpublished table decision); *McLaughlin v. Ranschau*, 791 N.W.2d 427, 2010 WL 3503543, at * 2 (Iowa Ct. App. Set. 9, 2010) (unpublished table decision); *Schneider v. Rodgers*, 752 N.W.2d 33, 2008 WL 508481, at *3 n.2 (Iowa Ct. App. Feb. 27, 2008) (unpublished table decision).[10]

---

[10]In two stray cases, the Iowa Supreme Court identified the second element of a malicious prosecution claim as "investigation" of the prosecution by the present

"Malice means any wrongful act which has been willfully and purposely done to the injury of another. There must be an improper purpose or motive. Malice may be actual, or it may be inferred from a want of probable cause." *Wilson*, 464 N.W.2d at 260 (quoting in *Brown v. Monticello State Bank*, 360 N.W.2d 81, 87 (Iowa 1984)). Probable cause is defined as:

> "One who takes an active part in the initiation, continuation or procurement of civil proceedings against another has probable cause for doing so if he reasonably believes in the existence of the facts upon which the claim is based, and either
>
> (a) correctly or reasonably believes that under those facts the claim may be valid under the applicable law, or
>
> (b) believes to this effect in reliance upon the advice of counsel, sought in good faith and given after full disclosure of all relevant facts within his knowledge and information."

---

defendant. *See Whalen v. Connelly*, 621 N.W.2d 681, 687-88 (Iowa 2000); *Employers Mut. Cas. Co. v. Cedar Rapids Television Co.*, 552 N.W.2d 639, 643 (Iowa 1996). This metamorphosis of the second element, from "instigation" in *Wilson* to "investigation" in *Employers Mutual*, appears to have been no more than a scrivener's error since *Employers Mutual* cites *Wilson* as the sole authority for the elements of a malicious prosecution claim. *See Employers Mut. Cas. Co.*, 552 N.W.2d at 643. Moreover, the Restatement (Second) of Torts, on which the Iowa Supreme Court relied in *Wilson*, defines the pertinent element as "initiation, continuation or procurement of civil proceedings against another. . . ." RESTATEMENT (SECOND) OF TORTS § 674 (1965); *see* RESTATEMENT (SECOND) OF TORTS § 681A (stating the element as "the defendant has initiated, continued or procured the civil proceedings against [the plaintiff]"). Finally, since *Whalen*, the Iowa appellate courts have referred to the second element only as "instigation" of the prosecution by the defendant. *See Winkel*, 652 N.W.2d at 460; *see also Craig*, 826 N.W.2d 516, 2012 WL 6193862, at *4; *Jackson*, 758 N.W.2d 349, 2011 WL 649471, at *4; *McLaughlin*, 791 N.W.2d 427, 2010 WL 3503543, at * 2; *Schneider*, 752 N.W.2d 33, 2008 WL 508481, at *3 n.2.

*Wilson*, 464 N.W.2d at 261-62 (quoting RESTATEMENT (SECOND) OF TORTS § 675). The Iowa Supreme Court has instructed that in determining the existence of probable cause

> "[t]he important question [is not the defendant's] belief but whether all the facts, as [the defendant] knew them or should have known, were such as to justify the ordinary, reasonably prudent, careful and conscientious person in reaching such a conclusion."

*Wilson*, 464 N.W.2d at 261 (quoting *Schnathorst v. Williams*, 36 N.W.2d 739, 748 (1949)).

### b.    *Analysis of claims*

The County defendants, the Law Firm defendants, and the Van Stelton defendants all contend that plaintiffs' claims against them for malicious prosecution fail because there was probable cause for Virgil's arrest and prosecution. For the reasons previously stated, I agree that Deputies Krikke and Gries had probable cause to arrest Virgil. I note that an Iowa magistrate found that there was probable cause to believe that Virgil had committed an assault and a trespass. After the assault charge was amended to assault causing bodily injury, both an Iowa magistrate and an Iowa district court judge concluded that there was probable cause to support the amended charge. Thus, because there are no genuine issues of material fact as to whether or not the arresting deputies had probable cause to arrest Virgil, the County defendants, the Law Firm defendants, and the Van Stelton defendants' motions for summary judgment on this claim are granted.

### 3.    *Defamation*

### a.    *Requirements for defamation claims*

Under Iowa law, defamation

> "is an impairment of a relational interest; it denigrates the opinion which others in the community have of the plaintiff and invades the plaintiff's interest in his reputation and good name. A cause of action for defamation is based on the

> transmission of derogatory statements, not any physical or
> emotional distress to plaintiff which may result. Defamation
> law protects interests of personality, not of property."

*Kiesau v. Bantz*, 686 N.W.2d 164, 175 (Iowa 2004) (quoting *Schlegel v. Ottumwa Courier*, 585 N.W.2d 217, 221 (Iowa 1998)). As I have previously explained, defamation under Iowa law consists of the "twin torts" of "libel" and "slander," where "libel" is defined as malicious publication, expressed either in printing or in writing, or by signs and pictures, tending to injure the reputation of another person or to expose the person to public hatred, contempt, or ridicule, or to injure the person in the maintenance of the person's business, and "slander" is defined as oral publication of defamatory material. *McFarland v. McFarland*, 684 F. Supp.2d 1073, 1086 (N.D. Iowa 2010); *Park v. Hill*, 380 F.Supp.2d 1002, 1015 (N.D. Iowa 2005); *Lyons v. Midwest Glazing, L.L.C.*, 235 F.Supp.2d 1030, 1043-44 (N.D. Iowa 2002); *accord Yates v. Iowa West Racing Ass'n*, 721 N.W.2d 762, 768 (Iowa 2006); *Kiesau v. Bantz*, 686 N.W.2d 164, 174 (Iowa 2004); *Barreca v. Nickolas*, 683 N.W.2d 111, 116 (Iowa 2004); *Delaney v. International Union UAW Local No. 94*, 675 N.W.2d 832, 839 (Iowa 2004); *Theisen v. Covenant Med. Ctr., Inc.*, 636 N.W.2d 74, 83 (Iowa 2001); *Johnson v. Nickerson*, 542 N.W.2d 506, 510 (Iowa 1996); *Lara v. Thomas*, 512 N.W.2d 777, 785 (Iowa 1994). In order to establish a prima facie case of defamation, the plaintiff must prove that the defendant "'(1) published a statement that (2) was defamatory (3) of and concerning the plaintiff, and (4) resulted in injury to the plaintiff.'" *Bertrand v. Mullin*, 846 N.W.2d 884, 891 (Iowa 2014) (quoting *Johnson v. Nickerson*, 542 N.W.2d 506, 510 (Iowa 1996)); *Kiesau*, 686 N.W.2d at 175 (same). The Iowa Supreme Court has recognized that:

> There are two kinds of libel: libel per se and libel per quod.
> In statements that are libelous per se, falsity, malice, and
> injury are presumed and proof of these elements is not
> necessary. *Vinson v. Linn-Mar Cmty. Sch. Dist.*, 360 N.W.2d
> 108, 115-16 (Iowa 1985). "An attack on the integrity and

> moral character of a party is libelous per se." *Wilson v. IBP,*
> *Inc.*, 558 N.W.2d 132, 139 (Iowa 1996).

*Kiesau*, 686 N.W.2d at 175. Similarly, the Iowa Supreme Court has recognized that statements may constitute "slander per se." *Barreca*, 683 N.W.2d at 116 (cataloguing Iowa slander per se cases).

The Iowa Supreme Court has long held that "[t]ruth is a complete defense to defamation." *Delaney v. International Union UAW Local No. 94*, 675 N.W.2d 832, 843 (Iowa 2004) (citing *Huegerich v. IBP, Inc.*, 547 N.W.2d 216, 221 (Iowa 1996)); *Marks v. Estate of Hartgerink*, 528 N.W.2d 539, 545 (Iowa 1995); *Hovey v. Iowa State Daily Publ'n, Inc.*, 372 N.W.2d 253, 255 (Iowa 1985); *Cowman v. LaVine*, 234 N.W.2d 114, 125 (Iowa 1975); *Vojak v. Jensen*, 161 N.W.2d 100, 108 (Iowa 1968); *McCuddin v. Dickinson*, 300 N.W. 308, 309 (Iowa 1941); *Children v. Shinn*, 168 Iowa 531, 150 N.W. 864, 869 (1915). Thus, a defamation claim may be defeated by proof that the statements were true. Moreover, the Iowa Supreme Court has recognized substantial truth as a defense in a defamation action. *See Behr v. Meredith Corp*. 414 N.W.2d 339, 342 (Iowa 1987); *Hovey*, 372 N.W.2d at 255-56; *see also Marks*, 528 N.W.2d at 545; *Campbell v. Quad City Times*, 547 N.W.2d 608, 610 (Iowa Ct. App. 1996). Under the substantial truth standard, defendants are not required to establish the literal truth of every detail of the publication, as long as the "sting" or "gist" of the defamatory charge is substantially true. *Hovey*, 372 N.W.2d at 255. As the Iowa Supreme Court has explained:

> The gist or sting of the defamatory charge, according to one court, is "the heart of the matter in question-the hurtfulness of the utterance." *Vachet v. Central Newspapers, Inc.*, 816 F.2d 313, 316 (7th Cir. 1987). We determine the gist or sting by "look[ing] at the highlight of the [publication], the pertinent angle of it, and not to items of secondary importance which are inoffensive details, immaterial to the truth of the defamatory statement." *Id.* (newspaper articles falsely stated plaintiff was arrested on a warrant; method of

arrest held immaterial to the truth of defamatory statement that plaintiff was arrested and charged with harboring suspected rapist of an elderly woman).

*Behr*, 414 N.W.2d at 342. With these principles in mind, I turn to defendants' arguments for summary judgment on plaintiffs' defamation claims.

### b.    Analysis of claims

In their Third Amended Complaint, plaintiffs allege that:

> 164.    Defendants Weber, Gries and Krikke published and caused to be published stories or articles in various media that Plaintiff Virgil Van Stelton had allegedly engaged in Domestic Assault knowing that those allegations were wholly false, defamatory and without basis.
>
> 165.    Further, the aforesaid Defendants made false and defamatory statements to each other and to third parties concerning Plaintiffs Virgil Van Stelton and Alvin Van Stelton with the intent to slander the Plaintiffs Van Stelton and cause them harm.

Third Am. Complaint at ¶¶ 164-65. The County defendants argue that their records of Virgil's arrest, which were picked up and broadcast by local media, contained the truth. The media reported that Virgil, age 63, was arrested for domestic assault and trespass on May 11, 2009, and that both charges were simple misdemeanors. All of these facts were true. Virgil admitted in his deposition that the reporting of his arrest was accurate. Virgil Dep. at 51, County Defendants' App. at 49. Likewise, the Van Stelton defendants' repeating of the information reported by the media concerning Virgil's arrest was truthful. Thus, the County defendants and the Van Stelton defendants have established their entitlement to summary judgment on plaintiffs' defamation claims and these portions of the County defendants' and the Van Stelton defendants' motions for summary judgment are granted.

### 4. Breach of fiduciary duty

#### a. Requirements of breach of fiduciary duty claims

Under Iowa law, to establish a breach of fiduciary duty, the plaintiffs must demonstrate the following elements: (1) the defendant owed the plaintiff a fiduciary duty; (2) the defendant breached this fiduciary duty; (3) the breach of the fiduciary duty was a proximate cause of the plaintiff's damages; and (4) the amount of damages. *See Asa–Brandt, Inc. v. ADM Investor Servs.*, 344 F.3d 738, 744 (8th Cir. 2003) (applying Iowa law); *NCMIC Fin. Corp. v. Artino*, 638 F. Supp. 2d 1042, 1082 (S.D. Iowa 2009) (same); *Top of Iowa Co-op. v. Schewe*, 149 F.Supp.2d 709, 717 (N.D. Iowa 2001) (same); *see also Greene v. Heithoff*, 808 N.W.2d 754, 2011 WL 5515167, at *10 (Iowa Ct. App. Nov. 9, 2011) (unpublished table decision); *Unterberger v. Bresnahan*, 789 N.W.2d 164, 2010 WL 2925843, at *3 (Iowa Ct. App. July 28, 2010) (unpublished table decision). It is well established that "[a] trustee owes a duty of loyalty to the trust and to its beneficiaries and must act in good faith in all actions affecting the trust." *Schildberg v. Schildberg*, 461 N.W.2d 186, 191-92 (Iowa 1990); *accord Harvey v. Leonard*, 268 N.W.2d 504, 512 (Iowa 1978); *In re Thompson Trust*, 801 N.W.2d 23, 26 (Iowa Ct. App. 2011). "'[A]s a general rule trustees are prohibited from engaging in self-dealing transactions with the trust and from obtaining personal advantage from their dealings with trust property.'" *Orud v. Groth*, 708 N.W.2d 72, 79 (Iowa 2006) (quoting *Harvey*, 268 N.W.2d at 512); *accord Coster v. Crookham*, 468 N.W.2d 802, 806 (Iowa 1991) (stating a "'trustee violates his duty to the beneficiary . . . where he uses the trust property for his own purposes'" (quoting RESTATEMENT (SECOND) OF TRUSTS § 170 cmt. 1 )).

#### b. Analysis of claims

The Law Firm defendants and the Van Stelton defendants both seek summary judgment on plaintiffs' claims of breach of fiduciary duty. The Law Firm defendants contend that they cannot be held liable for any breach of fiduciary duty because DeKoter

owed no fiduciary duty to them. The Van Stelton defendants assert that plaintiffs' breach of fiduciary duty claims against them are barred by res judicata. I will consider each of defendants' defenses in turn.

### i.  *The Law Firm defendants*

The Law Firm defendants assert that plaintiffs cannot establish that DeKoter owed a fiduciary duty to them. DeKoter is not alleged to have ever been a trustee of the Van Stelton Trust. Instead, plaintiffs allege that he "was retained as attorney for the Trust." Third Am. Complaint at ¶ 66. However, the uncontroverted summary judgment record establishes that DeKoter had an attorney-client relationship with only Margaret. DeKoter was never the attorney for the Trust while Margaret was alive. Plaintiffs have not directed me to any material in the summary judgment record which would give rise to a genuine issue of material fact on this issue. Thus, because DeKoter owed no fiduciary duty to plaintiffs as possible beneficiaries of the Trust, plaintiffs' breach of fiduciary claims against the Law Firm defendants fail as a matter of law and this portion of the Law Firm defendants' motion for summary judgment is granted.

### ii.  *The Van Stelton defendants*

Plaintiffs contend that the Van Stelton defendants breached their fiduciary duty because Jerry and Eugene paid below-market rents for the family land that was in the Trust. On July 31, 2007, the beneficiaries of the Trust were notified of Jacob Van Stelton's death, which occurred on August 6, 2006. In response, Virgil and Alvin, through their attorney John Werden, submitted a claim against the Trust, in which they alleged that Jerry and Eugene, the trustees at the time, had engaged in self-dealing for approximately forty years, and that they were entitled to an accounting of the rents paid to the Trust by Jerry and Eugene during that time period. On October 3, 2007, Virgil and Alvin's claim was denied. In response, Virgil and Alvin filed a lawsuit against Jerry, Eugene, and the Trust in Iowa District Court on October 30, 2007. The lawsuit included

claims for breach of fiduciary duty by Jerry and Eugene, as trustees of the Trust, for actions taken before March 29, 2007, when the family lands were still held in the Trust.

The Van Stelton defendants seek summary judgment on the ground of issue preclusion, a subset of res judicata.[11] In a diversity case, the application of issue preclusion is governed by the preclusion rules of the forum that provided the substantive law underlying the prior judgment. *Follette v. Wal–Mart Stores, Inc.,* 41 F.3d 1234, 1237 (8th Cir. 1994); *see Laaase v. County of Isanti*, 638 F.3d 853, 856 (8th Cir. 2011) ("The law of the forum that rendered the first judgment controls the res judicata analysis.") (quoting *St. Paul Fire & Marine Ins. Co. v. Compaq Computer Corp.*, 539 F.3d 809, 821 (8th Cir. 2008)); *Canady v. Allstate Ins. Co.*, 282 F.3d 1005, 1014 (8th Cir. 2002) ("[I]t is fundamental that the res judicata effect of the first forum's judgment is governed by the first forum's law, not by the law of the second forum.") (citation and internal quotation marks omitted); *see also Conwed Corp. v. Union Carbide Corp.*, 443 F.3d 1032, 1037–38 (8th Cir. 2006); *Hilary v. Trans World Airlines, Inc.*, 123 F.3d 1041, 1043 (8th Cir. 1997). Iowa law, then, governs whether issue preclusion applies in this case. *See Schooley v. Orkin Exterminating Co.*, 502 F.3d 759, 764 (8th Cir. 2007) (applying Iowa law). Thus, the question presented here is whether the Iowa state courts would give preclusive effect to the Iowa state court case.

---

[11] The term "res judicata" includes both issue and claim preclusion. *Plough v. West Des Moines Community Sch. Dist.*, 70 F.3d 512, 515 (8th Cir.1995). Before diving into the substance of the parties' arguments, it is important to first briefly review the nomenclature most commonly used in discussing the preclusive effect of a prior court judgment. Issue preclusion, or collateral estoppel, is a doctrine that bars relitigation of an issue identical to the issue actually litigated in the previous action. *Popp Telcom v. American Sharecom, Inc.*, 210 F.3d 928, 939 (8th Cir. 2000). Claim preclusion bars litigation of claims that were litigated, or could have been litigated, in the previous action. *Id.* at 940 n.13. The Van Stelton defendants argue that plaintiffs' claims against them for breach of fiduciary duty are barred by issue preclusion.

The Iowa Supreme Court has offered this explanation of issue preclusion:

> [T]he doctrine of issue preclusion prevents parties to a prior action in which judgment has been entered from relitigating in a subsequent action issues raised and resolved in the previous action. "When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim."

*Soults Farms, Inc. v. Schafer*, 797 N.W.2d 92, 103–04 (Iowa 2011) (quoting *Hunter v. City of Des Moines*, 300 N.W.2d 121, 123 (Iowa 1981) (quoting in turn RESTATEMENT (SECOND) OF JUDGMENTS § 68 (Tentative Draft No. 4, 1977) (now RESTATEMENT (SECOND) OF JUDGMENTS § 27 (1982)) (footnote omitted)); *see Comes v. Microsoft Corp.*, 709 N. W.2d 114, 118 (Iowa 2006*); Gardner v. Hartford Ins. Accident & Idem. Co.*, 659 N.W.2d 198, 202 (Iowa 2003). Issue preclusion "serves two important goals of providing fairness to the successful party in the first case and promoting efficient use of court resources by prohibiting repeated litigation over the same issue." *Hunter*, 742 N.W.2d at 584.

Under Iowa law, issue preclusion may be used defensively as a "shield" or offensively as a "sword." *Hunter*, 300 N.W.2d at 123; *see Schafer*, 797 N.W.2d at 104; *Fischer v. City of Sioux City*, 654 N.W.2d 554, 546–47 (Iowa 2002); *Harris v. Jones*, 471 N.W.2d 818, 820 (Iowa 1991). Defensive use of issue preclusion generally refers to "a stranger to the judgment, ordinarily the defendant in the second action, relies upon a former judgment as conclusively establishing in his favor an issue which he must prove as an element of his defense." *Hunter*, 300 N.W.2d at 123. Offensive use, on the other hand, typically refers to "a stranger to the judgment, ordinarily the plaintiff in the second action, relies upon a former judgment as conclusively establishing in his favor an issue which he must prove as an essential element of his cause of action or claim." *Id.*

The party asserting issue preclusion must establish four elements:

> "(1) the issue in the present case must be identical, (2) the issue must have been raised and litigated in the prior action, (3) the issue must have been material and relevant to the disposition of the prior case, and (4) the determination of the issue in the prior action must have been essential to the resulting judgment."

*Schafer*, 797 N.W.2d at 104 (quoting *Fischer*, 654 N.W.2d at 547); *accord George v. D.W. Zinser Co.*, 762 N.W.2d 865, 868 (Iowa 2009); *Chamberlain, L.L.C. v. City of Ames*, 757 N.W.2d 644, 648 (Iowa 2008); *Iowa Elec. Light & Power Co. v. Lagle*, 430 N.W.2d 393, 397 (Iowa 1988). In addition, the Iowa Supreme Court "has modified the traditional requirement of privity where the doctrine is invoked in a defensive manner." *Hunter*, 300 N.W.2d at 123. Issue preclusion may be applied defensively "between nonmutual parties where the four requisites delineated above are satisfied and where the party against whom the doctrine is invoked defensively 'was so connected in interest with one of the parties in the former action as to have had a full and fair opportunity to litigate the relevant claim or issue and be properly bound by its resolution.'" *Id.* (quoting *Bertran v. Glens Falls Ins. Co.*, 232 N.W.2d 527, 533 (Iowa 1975)).

I turn to examine whether the Van Stelton defendants can establish the required elements for invoking issue preclusion. The first two prerequisites mandate that the issue concluded in the prior litigation is identical to the issue currently before the court and that the issue was raised and litigated in the prior action. *See Schafer*, 797 N.W.2d at 104; *George*, 762 N.W.2d at 868; *Chamberlain, L.L.C.*, 757 N.W.2d at 648 (Iowa 2008); *Lagle*, 430 N.W.2d at 397; *Hunter*, 300 N.W.2d at 123. Virgil admitted that the claims he and Alvin raised in this case are the same ones they raised and litigated, then settled, in the Iowa state court case:

> Q.    The claim that you allege in your complaint here in federal court, Count 7, is based on what you – in general, mismanagement of the trust by your brothers, right?
>
> A.    Dan DeKoter was really mismanaging the trust.
>
> Q.    Did your brothers mismanage the trust in any way, or was it all Dan DeKoter's fault?
>
> A.    Couldn't have been done without them.
>
> Q.    So in what way is your Count 7 different from the state court action that you dismissed back in 2010 except for Dan DeKoter?
>
> A.    No difference.
>
> Q.    So then why if you settled that claim, why are you suing them now? Isn't that kind of frivolous? By them I mean your brothers and your sister-in-law.
>
> MS. NORA: Form. As to this count, right?
>
> A.    Yeah, I'm asking him about Count 7.
>
> Q.    I'm going to say I don't see any difference.

Virgil's Dep. at 1006; The Van Stelton Defendants' App. at 48.

As Virgil conceded during his deposition, the issue here, Jerry and Eugene's fiduciary actions while trustees of the Trust, is identical to one of the issues raised and litigated in the Iowa district court case. Thus, the first two requirements have been established. The next requirement of issue preclusion under Iowa law is that the issue was material and relevant to the disposition of the prior action. *See Schafer*, 797 N.W.2d at 104; *George*, 762 N.W.2d at 868; *Chamberlain, L.L. C.*, 757 N.W.2d at 648 (Iowa 2008); *Lagle*, 430 N.W.2d at 397; *Hunter*, 300 N.W.2d at 123. This requirement is met because the legality of Jerry and Eugene's actions as trustees of the Trust was at the center of the Iowa district court case. Lastly, the determination made of the issue in the prior action must have been necessary and essential to the resulting adjudication. *See*

*Schafer*, 797 N.W.2d at 104; *George*, 762 N.W.2d at 868; *Chamberlain, L.L.C.*, 757 N.W.2d at 648 (Iowa 2008); *Lagle*, 430 N.W.2d at 397; *Hunter*, 300 N.W.2d at 123. This prerequisite is also satisfied because the claim against Jerry and Eugene, concerning their fiduciary actions while trustees of the Trust, was governed by the parties' settlement. Therefore, the Van Stelton defendants' motion for summary judgment is granted as to plaintiffs' breach of fiduciary duty claims on the ground of issue preclusion.

### 5. *Interference with prospective business advantage*

The Law Firm defendants also seek summary judgment on plaintiffs' claim of tortious interference with prospective business relations. The Law Firm defendants contend that there are not materials in the summary judgment record which would permit a reasonable fact finder to conclude that DeKoter interfered with plaintiffs' prospective business opportunities. Plaintiffs have not addressed this argument in their brief.

### a. *Requirements for claim*

Under Iowa law, the elements of a claim for tortious interference with prospective business advantage are as follows:

> "(1) A prospective contractual or business relationship;
>
> (2) the defendant knew of the prospective relationship;
>
> (3) the defendant intentionally and improperly interfered with the relationship;
>
> (4) the defendant's interference caused the relationship to fail to materialize; and
>
> (5) the amount of resulting damages."

*Blumenthal Inv. Trusts v. City of W. Des Moines*, 636 N.W.2d 255, 269 (Iowa 2001) (quoting *Iowa Coal Mining Co. v. Monroe Cnty.*, 555 N.W.2d 418, 438 (Iowa 1996)). "Interference with a prospective business contract is an intentional tort which requires a showing that the sole or predominant purpose of the actor's conduct was to financially

injure or destroy the plaintiff." *Lorenzen Steffen Ins. Agency, Inc. v. United Fire & Cas. Co.*, 666 N.W.2d 619 (Iowa Ct. App. 2003) (citing *Economy Roofing & Insulating Co. v. Zumaris*, 538 N.W.2d 641, 651–52 (Iowa 1995)); *see Hoefer v. Wisconsin Educ. Ass'n Ins. Trust*, 470 N.W.2d 336, 341 (Iowa 1991) ("[P]laintiffs who allege tortious interference with prospective business relations are held to a strict standard of substantial proof 'that the defendant acted with a predominantly improper purpose.'" (quoting *Harsha v. State Sav. Bank*, 346 N.W.2d 791, 800 (Iowa 1984))).

### b.     Analysis of claim

Plaintiffs allege that:

> 173.   During the 2009 crop year, Defendant DeKoter maliciously interfered with the Plaintiffs Van Stelton in their effort to bid against the Defendants Van Stelton for the right to plant the Trust lands costing them the opportunity to compete for the income to be gained from that crop season.

Third Am. Complaint at ¶ 173.  The apparent flaw in this claim is that, by 2009, after Margaret's death, the Iowa district court had appointed a referee who was responsible for managing the disputed farm land during the 2008 and 2009 crop years.  Russell Kasch became the sole trustee of the Trust on October 30, 2007, and hired independent counsel, Dick Montgomery, to represent the Trust.  The summary judgment record is devoid of any evidence that DeKoter interfered with Virgil and Alvin's bidding against Jerry and Eugene for the right to farm the family farmland during the 2009 crop year.  Plaintiffs have not offered any explanation of how DeKoter interfered with Virgil and Alvin's bidding on the family crop land for the 2009 crop year and have not directed my attention to anything in the record which would create a genuine issue of material fact on this claim.  Accordingly, this portion of the Law Firm defendants' motion for summary judgment is granted.

### III. CONCLUSION

For the reasons stated above, it is ordered that the County defendants, the Law Firm Defendants and the Van Stelton defendants' motions for summary judgment are each granted in their entirety. Trial, on February 2, 2015, will proceed on plaintiffs' claims against Gary Christians and the County defendants' counterclaim.

**IT IS SO ORDERED**.

**DATED** this 30th day of September, 2014.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA